501 P.2d 1247

STATE of New Mexico, Plaintiff-Appellee,

v.

Kenny SAINZ, Defendant-Appellant.

No. 876.

Court of Appeals of New Mexico.

Sept. 29, 1972.

Benjamin S. Eastburn, Thomas J. Hynes, Farmington, for defendant-appellant.

David L. Norvell, Atty. Gen., Victor Moss, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of delivery of a narcotic drug contrary to § 54–7–14, N.M.S.A.1953 (Repl.Vol.1962) defendant appeals. Defendant's second point relating to the defense of entrapment as a matter of law is dispositive of the appeal.

We reverse and remand for discharge.

Heimerich, a police undercover agent, and Ringo, a police informant, met defendant at a party in April and during the next month or so developed a friendly relationship. Heimerich used the story that he worked for big dealers and big pushers in the Albuquerque area and solicited of defendant if he knew where he could make a buy of narcotics. Heimerich stated that he could get a sizable amount of money from the dealers and pushers if he could "prove to them" a supply of drugs. Later, in May, defendant advised Heimerich that he

was going to his brother's wedding in Prescott, Arizona. Upon being asked, defendant stated he knew where drugs could be purchased in Phoenix, Arizona. Heimerich advised defendant he would like to have him purchase some narcotics. Heimerich then gave Ringo $500.00 for the trip expenses and to buy narcotics and supplied Ringo with a free car.

Defendant, Ringo and Romero (a friend of defendant's) then left for Arizona. Defendant stopped in Prescott to attend his brother's wedding, while Ringo and Romero proceeded to Phoenix. Romero testified that defendant gave them a name and a Phoenix address where they could make a buy of narcotics. When Ringo and Romero arrived at the address "nobody lived there." Romero then testified that Ringo bought the drugs on the street in Phoenix. Subsequently, Ringo and Romero returned to Prescott where they picked up defendant. Ringo then called Heimerich and was directed to meet Heimerich along the highway near Fruitland, New Mexico. At the time they met Heimerich, Ringo had possession of the narcotics. Ringo then handed a small plastic bag of white powder to defendant and told him to take it to Heimerich, who was in a car parked behind Ringo's car. At this point there is conflict in the testimony as to whether, upon handing the bag to Heimerich, defendant said "here, it cost $100.00" or whether he said "this is Asian heroin", but this conflict is immaterial to the outcome of the case. The bag in fact contained morphine.

 Ordinarily the question of entrapment is one for the jury to decide under a proper instruction. Did the officers merely afford the defendant an opportunity to do what he was already predisposed to do? State v. Roybal, 65 N.M. 342, 337 P.2d 406 (1959); State v. Sena, 82 N.M. 513, 484 P.2d 355 (Ct.App.1971). However, defendant contends in light of the foregoing facts that he has established the defense of entrapment as a matter of law. We agree.

We are most impressed with the reasoning in United States v. Russell, 459 F.2d 671 (9th Cir. 1972). In that case the government agent supplied Russell with a "difficult to obtain" ingredient for the manufacturer of methamphetamine in exchange for one-half the drug manufactured with the ingredient. The agent also assisted in manufacturing the drug and purchased an additional share of the product. Russell conceded he may have been harboring a predisposition to commit the offenses charged but nevertheless maintained he was entitled to the defense of entrapment as a matter of law. Russell relied on the language in the concurring opinion of Justices Frankfurter and Roberts in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) and Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). These concurring opinions proposed a test for entrapment that focused, not on the intent of the accused, but on the conduct of the government.

> " 'The crucial question, not easy of answer, to which the court must direct itself is whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power.' "

The government in *Russell* argued that " . . . one altogether forfeits an entrapment defense if he is 'predisposed' to commit the crime."

In answering that contention the *Russell* court stated:

> "We need not resolve the precise issue apparently presented by the parties. For regardless of the significance of 'predisposition' as an element in 'entrapment,' we conclude that there is merit in Russell's contention that a defense to a criminal charge may be founded upon an intolerable degree of governmental participation in the criminal enterprise. . . . "

■ We agree with defendant's statement that " . . . as the part played by the state increases, the importance of the defendant's predisposition and intent decreases, until at some point entrapment as a matter of law is reached. . . ." When the state's participation in the criminal enterprise reaches the point where it can be said that except for the conduct of the state a crime would probably not have been committed or because the conduct is such that it is likely to induce those to commit a crime who would normally avoid crime, or, if the conduct is such that if allowed to continue would shake the public's confidence in the fair and honorable administration of justice, this then becomes entrapment as a matter of law. Carbajal-Portillo v. United States, 396 F.2d 944 (9th Cir. 1968); United States v. Bueno, 447 F.2d 903 (5th Cir. 1971); United States v. Russell, supra; Sherman v. United States, supra.

Here the state's "creative activity" has risen to a level substantially more intense and aggressive than the level tolerated by most courts. In this case, in reality, the government virtually supplied the *sine qua non* of the offense. See People v. Strong, 21 Ill.2d 320, 172 N.E.2d 765 (1961).

■ It is fundamental that the basic thought behind the doctrine of entrapment is that officers of the law should not incite crime merely to punish the perpetrator. The question of accused's predisposition tends to a subjective standard which varies from case to case and person to person. The issue is better framed in " . . . the objective terms of whether persons at large who would not otherwise have done so would have been encouraged by the government's actions to engage in crime. The focus . . . [should be] on the activities of the government and their relation to the reasonable man." Working Papers of the National Commission on Reform of Federal Criminal Laws, Comment on Entrapment, July 1970, Vol. I, p. 303. Otherwise the doctrine of entrapment will remain as " . . . gropingly . . . [expressing] the feeling of outrage at conduct of law enforcers . . . but without the formulated basis in reason that it is the first duty of courts to construct. . . ." Sherman v. United States, supra; Comment, The Constitutional Status of the Entrapment Defense, 74 Yale L. Rev. 942 (1965).

Reversed and remanded with directions to set aside the judgment and discharge the defendant.

It is so ordered.

COWAN and HERNANDEZ, JJ., concur.