537 P.2d 706

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Richard Eugene JACKSON, Defendant-Appellant.**

**No. 1743.**

Court of Appeals of New Mexico.

June 11, 1975.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HERNANDEZ, Judge.

Defendant-Appellant was convicted after trial by jury for trafficking in heroin contrary to § 54–11–20, N.M.S.A.1953 (Repl. Vol. 8, pt. 2, Supp.1973). He brings this appeal alleging three points of error. We affirm.

POINT I: "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S CHALLENGE TO THE JURY."

Appellant is a black. He urges reversal under this point on the ground that only one of the thirty-five member panel from which his trial jury was selected shared his racial origins. The ultimate jury selection was accomplished before the name of the one black panel member had been reached, and there was, therefore, no black on the *petit* jury that rendered his conviction.

The challenge to the lack of black representation on appellant's jury came in a rather short statement made by his trial counsel out of the presence of the jury during *voir dire*. It reads in pertinent part as follows: "Mr. Weldon: . . . It is not a true representative of the class and [is] in violation of the constitution in that the defendant is black and is not properly being represented by a percentage of blacks on the jury." The argument has no merit. In State v. Tapia, 81 N.M. 365, 467 P.2d 31 (Ct.App.1970), this court held that in order to gain reversal of a conviction in circumstances such as these, the defendant must show that the jury was chosen by a process of purposeful discrimination aimed at the exclusion of minority representation. In his brief on appeal, appellant argues that we should regard the absence of any black persons on the jury as a *prima facie* showing of purposeful discrimination, thus shifting the

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, App. Defender, Robert R. Rothstein, Asst. App. Defender, Santa Fe, for defendant-appellant.

burden to the state to make proof of the nonexistence thereof. In this contention, appellant is mistaken. "The mere absence of persons of a race or class does not give rise to the inference of systematic exclusion." State v. Newman, 83 N.M. 165, 489 P.2d 673 (Ct.App.1971). Appellant did not allege, nor does the record support, an inference of purposeful exclusion of blacks from jury service; we accordingly affirm the trial court's denial of appellant's challenge. State v. Newman, supra.

POINT II: "THE TRIAL COURT ERRED IN SUSTAINING OBJECTION TO DEFENDANT'S INQUIRY OF A WITNESS AS TO HIS LOCATION PRIOR TO TRIAL."

The trial of the charges in this case took a day. The prosecution's case took all morning. In chambers, at the close of the state's case, but before the noon recess, counsel for the defendant moved to continue the proceedings until such time as the attendance of one James E. Serna, the informer through whom the undercover narcotics agent achieved introduction to the defendant, could be obtained. A subpoena had been issued three weeks prior to the date of trial, but no return had been made. In support of the continuance, defense counsel proffered what he expected Serna's testimony would be. The proffer alleged that Serna would testify that defendant was the target of a plan concocted by the Alamogordo police to induce the commission of a trafficking offense. The motion for continuance was denied.

At the resumption of proceedings after lunch, Serna was present and took the stand as defendant's first witness. Counsel for the defendant wanted to know when Serna had returned to Alamogordo and where he had been during the three weeks prior to trial. The District Attorney objected to this inquiry on the grounds of immateriality and irrelevancy. The objection was sustained and Serna went on to testify in terms generally corroborative of the tes-

timony previously elicited from the police witnesses during the state's case-in-chief and in contradiction of defendant's proffer.

The law in New Mexico indicating the method for preserving a proper objection to the exclusion of testimony has been long established.

"In order for the appellant to raise the question as to the propriety of the ruling of the court upon the sustaining of the objection to the question, it was necessary for him to make a tender of the testimony which he expected to elicit . . . . Counsel failing, however, to make a tender, leaves this court without any information concerning the relevancy of the answer, and under these circumstances it will be assumed that the ruling of the trial court was correct." State v. McCracken, 22 N.M. 588, 166 P. 1174 (1917).

The record before us is void of any indication whatsoever of how Serna might have responded to counsel's inquiry, and the alleged error raised under this point is consequently not capable of resolution on appeal. Kindschi v. Williams, 86 N.M. 458, 525 P.2d 385 (Ct.App.1974); Worthey v. Sedillo Title Guaranty, Inc., 85 N.M. 339, 512 P.2d 667 (1973).

POINT III: "THE INSTRUCTIONS GIVEN TO THE JURY CONCERNING THE DEFENDANT'S THEORY OF ENTRAPMENT WERE ERRONEOUS."

Under this point of error defendant first argues that since State v. Sainz, 84 N.M. 259, 501 P.2d 1247 (Ct.App.1972), jury instructions on entrapment which indicate any concern with the "predisposition" of the accused are impermissible. He is mistaken. For the New Mexico development in this area, compare State v. Sena, 82 N. M. 513, 484 P.2d 355 (Ct.App.1971); State v. Roybal, 65 N.M. 342, 337 P.2d 406 (1959). Underlying this argument is a distinction that has developed in the federal courts between the so-called "subjective test" and "objective test" for entrapment.

Compare United States v. Russell, 459 F.2d 671 (9th Cir. 1972), with United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L. Ed.2d 366 (1973).

The issue in *Sainz* was whether there was entrapment as a matter of law. Speaking to that issue we stated:

"We agree with defendant's statement that '. . . as the part played by the state increases the importance of the defendant's predisposition and intent decreases, until at some point entrapment as a matter of law is reached . . . .' "

We then set forth the test for determining when that point had been reached:

"When the state's participation in the criminal enterprise reaches the point where it can be said that except for the conduct of the state a crime would probably not have been committed or because the conduct is such that it is likely to induce those to commit a crime who would normally avoid crime, or, if the conduct is such that if allowed to continue would shake the public's confidence in the fair and honorable administration of justice, this then becomes entrapment as a matter of law."

■ Indeed, the law of entrapment in New Mexico may be characterized as utilizing both tests, weighing the objective *indicia* of police involvement against the subjectively determined state of mind of the accused. Where it is determined that an accused harbored a strong predisposition for committing the offense charged, a greater degree of governmental participation will be condoned. However, where, as in *Sainz*, the degree of governmental participation is so great that there is serious question as to whether a crime would have been committed without that participation, the extent of the accused's criminal predisposition will be given little, if any, consideration.

At trial, defendant testified that Serna and the state's undercover narcotics agent visited his home on two occasions on May 23, 1974. During the afternoon encounter, defendant testified that: "James Serna asked me did I have any dimes. I knew James Serna was using heroin as well as myself, so I trusted him. I told him I would have some later on." Defendant's recollection of the second encounter later that night reads in pertinent part as follows:

"I was sitting in the living room and they knocked on the door. I got up and answered the door and let both of them in because I knew Velarde [the undercover narcotics agent], Serna had informed me he was all right. So, I trusted him and let him inside the house. While we was in the house, we proceeded to the kitchen. And 'T', this other friend of mine, he was sitting down at the table. And Serna asked me did I have any stuff. I told him, 'Yeah, I got two dimes.' So, he says, 'I'm sick and I need some.' So I gave him two dimes down on the table."

The indictment in this case charges a sale of a Schedule I controlled substance to undercover agent Velarde. Both Velarde and Serna testified that the sale was to Velarde. Defendant's version, while clearly confessing a sale, differs from the prosecution's version in that it maintains that the sale was made to Serna. At the first meeting, the defendant, by his own testimony, indicated that although he had no heroin for sale at the moment, he would be getting some later on in the day.

■ It appears that defendant would have us determine that he was entrapped because Serna claimed he was "sick", and that this then constituted an impermissible degree of governmental inducement. See United States v. Sherman, 200 F.2d 880 (2d Cir. 1952), rev'g. appeal after remand, 240 F.2d 949 (2d Cir. 1957), 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). We note, however, that the jury was instructed that it had to find that the sale was made to agent Velarde before it could hold the defendant guilty. The verdict returned was that the defendant was indeed guilty as charged. It is supported

by substantial evidence. We do not consider the governmental activity in this case as even remotely analogous to its involvement in *Sainz,* and we cannot say, as a matter of law, that the defense of entrapment is supported by the record.

"Mere presentation of an opportunity to commit a crime will not satisfy the requirements of the defense. Entrapment 'has no application to a situation where enforcement officers merely permit a violation to occur in order to get sufficient facts to insure conviction'. For example, a simple offer by an officer or agent to buy drugs will not warrant an instruction on entrapment." [Footnotes Omitted.] Entrapment: A Critical Discussion, 37 Mo.L.R. 633 (Fall 1972).

Nevertheless, defendant contends secondly that the giving of instruction 13 constituted jurisdictional error because it laid the burden of proof on the question of entrapment upon the defendant. The challenged instructions read as follow:

"13. The Defendant has raised the defense of entrapment. Entrapment occurs when the criminal design or conduct originates in the mind of the officer and is implanted by him in the mind of an otherwise innocent person. Another way of defining entrapment is to say that the crime originated with the officer who induced the Defendant to commit the crime when he had no previous disposition to do so.

"However, if the Defendant was engaged in similar crimes or was ready and willing to violate the law and the officer merely afforded him an opportunity to do so, then the defense of entrapment is not established.

"It is not permissible for an officer to initiate the criminal act, nor to use undue persuasion or enticement to induce the Defendant to commit the crime, when without such conduct on the part of the officer the Defendant would not have committed the crime.

"You are instructed that if you find that the defense of entrapment has been established by the Defendant, then you must find the Defendant not guilty."

"14. Where a person already has the willingness and the readiness to break the law, the mere fact that the government agent provides what appears to be a favorable opportunity is not entrapment. However, if you have a reasonable doubt whether the Defendant has the previous intent or purpose to commit the offense, and committed the offense only because he was induced or persuaded by Officer Velarde, then you must acquit the Defendant."

Defendant contends that the giving of instruction 13, was erroneous; in that the burden should have been more properly placed upon the state to prove beyond a reasonable doubt that defendant was *not* entrapped. See Reed v. State, 130 Ga. App. 659, 204 S.E.2d 335 (1967); United States v. Banks, 475 F.2d 1367 (5th Cir. 1973); United States v. Sherman, 200 F.2d 880, supra. Without commenting on the merits of the argument, we note that the instructions include some aspects of the so-called objective test and some aspects of the subjective test; and we see no reason to disaffirm these instructions upon any consideration of misplaced focus in that regard because both tests are to be applied to the relevant facts of a particular case under our decision in *Sainz,* supra.

Finally, as to the burden of proof question, we conclude that it is an issue that we need not decide. Instruction 14 told the jury to acquit the defendant if it had a reasonable doubt on the question of entrapment. Instruction 14, thus, substantially instructs the jury as to defendant's contention. The fact that instruction 13 may be viewed as inconsistent with number 14 does not provide a basis for review in the absence of an objection by the defendant. State v. Gunzelman, 85 N.M. 295, 512 P.2d 55 (1973).

The judgment and sentence rendered below are affirmed.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.