547 P.2d 557
**STATE of New Mexico, Petitioner,**
v.
**James Otis FIECHTER, Respondent.**
**No. 10527.**

Supreme Court of New Mexico.
March 15, 1976.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Asst. Atty. Gen., Santa Fe, for petitioner.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, App. Defender, Donald Klein, Jr., Associate App. Defender, Santa Fe, for respondent.

## OPINION

STEPHENSON, Justice.

Charged with the unlawful possession of a controlled substance [1] (marijuana), Fiechter moved for dismissal during trial claiming entrapment as a matter of law. The trial court denied the motion, but gave an instruction on entrapment which Fiechter had requested.[2] The jury convicted. The Court of Appeals reversed, holding entrapment existed as a matter of law. *State v. Fiechter*, 88 N.M. 437, 540 P.2d 1326 (Ct.App.1975). We granted certiorari and reverse the Court of Appeals.

After the closing of a methadone maintenance program in Taos, the defendant moved to Albuquerque to enroll in a similar program, but a waiting period was required before treatment could begin. Immediately upon his arrival he contacted his former heroin supplier, Mora, who had been arrested for narcotics violations and now worked as an informant. Mora supplied Fiechter with heroin, and the two agreed to arrange a sale of marijuana.

1. Section 54–11–23 N.M.S.A. (Supp.1975).

2. "One of the defenses raised in this case is that of entrapment. A defendant can be said to have been entrapped only when the officers or agents originate the criminal intent or design and use undue persuasion or enticement to induce the defendant to commit the crime with which he is charged. He has not been entrapped if the officers or agents merely offer him an opportunity to commit an offense which he is ready and willing to commit. In other words, the criminal conduct must be the product of the creative activity of the law enforcement officials or their agents for entrapment to exist. If you find that except for the conduct of the State through its agents, a crime would probably not have been committed by a reasonable person in the defendant's place, then you must find the defendant not guilty."

During the transaction Fiechter was arrested and was charged with the unlawful possession of a controlled substance.

There is nothing new about pleas of entrapment. Eve said, "The serpent beguiled me and I did eat."[3] The results were unfortunate but scarcely unjustified. Such pleas often have a hollow ring because implicit in them is an admission by the orator of commission of the crime charged. The efficacy of the beguilment, assuming the defendant is predisposed to commit the crime, is normally viewed with a healthy skepticism by courts and juries alike.

██ Although entrapment is not a defense of constitutional dimension, and we are not therefore bound to apply the law as announced by the United States Supreme Court, we find the opinions of that court persuasive on the subject, particularly *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), which reviews and follows the majority opinions in certain of its prior cases.[4] These cases establish that entrapment is a relatively limited defense.

Police participation in criminal conduct has often been discussed in the major Supreme Court opinions on entrapment. Chief Justice Hughes said in *Sorrells v. United States, supra:*

> It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. (Citations omitted.) The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.

*287 U.S. at 441–42, 53 S.Ct. at 212.*

And Chief Justice Warren in *Sherman v. United States, supra,* opined:

> In *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, this Court firmly recognized the defense of entrapment in the federal courts. The intervening years have in no way detracted from the principles underlying that decision. The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, "A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." 287 U.S. at page 442, 53 S.Ct. at page 212.

356 U.S. at 372, 78 S.Ct. at 820.

Particularly in relation to the narcotics traffic, the majority in *United States v. Russell, supra,* said:

> * * * in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means

---

3. Genesis 3:13 (King James).

4. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) ; *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

of investigation; \* \* \*. For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them. Law enforcement tactics such as this can hardly be said to violate 'fundamental fairness' or 'shocking to the universal sense of justice.' (Citation omitted.) 411 U.S. at 432, 93 S.Ct. at 1643.

With this brief introduction to entrapment we now turn to New Mexico law.

Entrapment as a matter of law has been found by New Mexico appellate courts only in *State v. Sainz,* 84 N.M. 259, 501 P.2d 1247 (Ct.App.1972). In that case the State and its agents requested narcotics from the defendant, supplied the money, and purchased the contraband. The Court of Appeals held that the State's participation in the criminal conduct constituted entrapment as a matter of law. The court relied on the Ninth Circuit decision in *United States v. Russell,* 459 F.2d 671 (9th Cir. 1972), which was later reversed by the Supreme Court.[5]

We do not approve of the language quoted from the Ninth Circuit opinion in *United States v. Russell, supra,* by which the result was reached in *State v. Sainz.* The rationale of the United States Court of Appeals was espoused by a dissenting minority in each of the United States Supreme Court cases we have cited, and in each case rejected by the majority. The United States Court of Appeals concluded that in entrapment cases the focus should be on the activities of the government, exactly as the New Mexico Court of Appeals did in this case. We disagree. Our Court of Appeals was doubtless relying on language in *State v. Sainz, supra,* and were misled thereby. *State v. Sainz* is overruled.

5. 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

6. "Evidence has been presented that the defendant was induced to commit the crime by law enforcement officers or their agents. For

And in *State v. Jackson,* 88 N.M. 98, 537 P.2d 706 (Ct.App.1975), the Court of Appeals was incorrect when it stated:

Indeed, the law of entrapment in New Mexico may be characterized as utilizing both tests, weighing the objective *indicia* of police involvement against the subjectively determined state of mind of the accused.

88 N.M. at 101, 537 P.2d at 709.

That case is overruled to that extent.

■ The United States Supreme Court's opinion in *U. S. v. Russell, supra,* which we have approved, holds that in entrapment cases, the focal issue is "the intent or predisposition of the defendant to commit the crime." 411 U.S. at 429, 93 S.Ct. at 1641. The Court further said, quoting from *Sorrells v. United States, supra:*

"[I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue."

Id.

The recently approved New Mexico Uniform Jury Instruction—Criminal 41.35 (effective September 1, 1975) also reflects this position.[6]

■ Thus, under the subjective standards we approve today, it is rare indeed when entrapment may correctly be held to exist as a matter of law. And if entrapment in law is not present, then the jury must decide whether the defendant was predisposed to commit the crime. *State v. Akin,* 75 N.M. 308, 404 P.2d 134 (1965); *State v. Roybal,* 65 N.M. 342, 337 P.2d 406 (1959). We place our reliance on the sense of justice and fair play reposing in juries under correct instructions upon the law.

you to find the defendant guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant was already willing to commit the crime and that the law enforcement officials or their agents merely gave him the opportunity."

■ We now turn to the evidence here, mindful of our precedents holding that in an appeal from a criminal conviction we must view the evidence in a light most favorable to the State, resolving all conflicts and making reasonable inferences from the evidence in favor of the verdict. *State v. Betsellie,* 82 N.M. 782, 487 P.2d 484 (1971); *State v. Romero,* 67 N.M. 82, 352 P.2d 781 (1960). The Court of Appeals ignored this principle of appellate review.

■ The record shows by Mr. Fiechter's own testimony that due to his addiction, he was unable to work. He was utterly without funds, having pawned his television, radio and bicycle to obtain drugs. He was in desperate need of money for heroin. He described his frequent conversations with Mr. Mora whence came the plan for the marijuana transaction which led to his downfall:

Q. When was the next time that the subject was mentioned?

A. Every time I saw him, I guess, just about. It was always mentioned, see, to pool our thoughts, more or less, on where to get money, and the T.V. was gone and the radio was gone, and the bicycle was gone, and what have you, and there was nothing else, you know.

It is clear from the record that money obtained would be used to purchase drugs, and the plan for the marijuana transaction eventually resulted. Upon the entire record the jury could reasonably have believed that the parties "pooled their thoughts" to plan a criminal enterprise in which Mr. Fiechter was predisposed to participate.

We find no great resemblance between the facts in this case and those in *Sherman v. United States, supra,* relied upon so heavily by our Court of Appeals, in which entrapment as a matter of law was found. A government informer and the defendant in Sherman were being treated for drug addiction. The informer, appealing to the sympathy of the defendant for his own plight, repeatedly asked the defendant if he knew a good source of narcotics. After refusing several times, he finally relented and arranged several sales for which he was arrested. Holding entrapment existed as a matter of law based on the informant's testimony, the Court stated:

[T]he fact that government agents "merely afford opportunities or facilities for the commission of the offense does not" constitute entrapment. Entrapment occurs only when the criminal conduct was "the product of the creative activity" of law-enforcement officials. [Quoting *Sorrells v. United States,* 287 U.S. 435, 441, 451, 53 S.Ct. 210]. To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. 356 U.S. at 372, 78 S.Ct. at 821.

Fiechter could hardly be classified as an "unwary innocent." The informer in *Sherman* enticed the defendant to return to his heroin habit by playing on the sympathy of the defendant for the informer's plight. In the case at bar the informer suggested a plan to get money to buy heroin, and the defendant, having already returned to heroin on his own, agreed to commit the crime. The jury could have believed that the informer merely supplied the opportunity. The facts in this case do not reach the level of government participation found in *Sherman.*

A remarkable feature of the opinion of the Court of Appeals is its concluding paragraph, which says:

In concluding, we note that this defendant is not the sort of person who ought to be sent to jail for the possession of controlled substances. The record shows that he did everything the state ordinarily recommends in order to break his heroin habit. He resisted strenuous urgings by an informer to sell marijuana, while supporting his habit by pawning his own goods during a painful delay before entry into an Albuquerque methadone program. The law does not require heroic standards of conduct. It

would be ignoble "doublespeak" for this state to encourage withdrawal and treatment, with one hand, and alternatively . punished crimes of possession with the other, when the very means of withdrawal have been eliminated through no fault of the addict, and the means of committing the crime supplied by a police informer.

The particular proposition of law sought to be expounded is lost upon us, particularly the comment on heroic standards. The standards which the law requires of the citzenry in general is that they will comply with the law or suffer the consequences. Is some less stringent standard to be applied to those who have voluntarily addicted themselves and engage in the drug traffic to support their habit?

The Court of Appeals is reversed. The remaining issues raised on appeal in the Court of Appeals are not worthy of discussion. The judgment of the trial court is affirmed.

IT IS SO ORDERED.

OMAN, C. J., and McMANUS, MON TOYA and SOSA, JJ., concur.