605 P.2d 1160
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Johnny ALVAREZ, Defendant-Appellant.
No. 3159.**

Court of Appeals of New Mexico.

Feb. 21, 1978.

Toney Anaya, Atty. Gen., Suzanne Tanner, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

John B. Bigelow, Chief Public Defender, Martha Daly, Asst. Appellate Defender, Santa Fe, Michael L. Stout, Asst. Public Defender, Roswell, for defendant-appellant.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of trafficking in heroin. The issues involve: (1) unavailability of the informer at trial; (2) entrapment as a matter of law, and (3) jury selection.

### Unavailability of the Informer at Trial

Three persons were present at the heroin sale—defendant, an undercover police officer and the informer. Although the trial court authorized the taking of the informer's deposition, this was not accomplished because of defendant's inability to subpoena the informer or otherwise secure his presence at the scheduled deposition.

The informer was involved in several narcotics cases in Chaves County. Defense attorneys in these several cases, as well as the prosecutor, desired to locate the informer. Acting upon information that the informer was in Amarillo, Texas, on June 2, 1977, the defense attorney in one of the cases went to that city to try to locate and interview the informer. The prosecutor and various New Mexico law enforcement officials also went to Amarillo and secured the cooperation of Texas law enforcement officials. Various things happened—the defense attorney was arrested, the informer was contacted by telephone but either skipped or went into hiding after the telephone call.

Thereafter, the trial court conducted an evidentiary hearing and, on conflicting evidence, ruled that the prosecutor's activities in Amarillo were not the cause of defense counsel's inability to make contact with the informer. The trial court also ruled that the prosecutor's Amarillo activities were for the purpose of making the informer available as a witness in the several narcotics cases. Defendant concedes that the evidence supports these trial court rulings.

Defendant's claim in this appeal is that the State did not exercise due diligence in attempting to locate the informer and that the State's activities throughout, in connection with making the informer available, were negligent. Defendant contends the charges against him should have been dismissed because the asserted negligence of the State deprived defendant of an opportunity to interview the informer and to properly prepare his defense. The result, according to defendant, was that the State denied defendant a fair trial.

*State v. Carrillo*, 88 N.M. 236, 539 P.2d 626 (Ct.App.1975) holds that when the in-

former disappears or becomes unavailable to the defense, upon the defendant's timely demand, the State must either locate the informer or must "satisfy the court as to why it could not reasonably be expected to produce the informer and satisfy the court as to the State's diligence as regards the disappearance."

It is undisputed that defendant's efforts to interview the informer were timely. The State could not produce the informer. Defendant moved to continue the trial until the informer could be produced or, in the alternative, to dismiss. At the hearing on these motions the State had to meet the two requirements stated in *State v. Carrillo,* supra. Whether the State met this burden was a question of fact to be decided by the trial court. *State v. Carrillo,* supra.

■ At the hearing both parties relied on the evidentiary hearing held in connection with the Amarillo affair. The evidence at that hearing shows: 1. The informer left Chaves County before arrests were made on the several narcotics indictments; this was in December, 1976 or January, 1977. 2. Local officers thought the informer went to Las Cruces. 3. Not knowing the informer's location, in early March, 1977, a teletype message was sent to police departments in areas where the informer might have contacts—Amarillo, Lubbock, Dallas, El Paso, Clovis, Las Cruces, Santa Fe and Albuquerque. The message asked for information on the informer's whereabouts subsequent to January 1, 1977. There was a negative response from each department. 4. After this negative response, a warrant for the informer's arrest as a material witness was issued in March, 1977 and information as to the existence of this warrant was sent to various police departments. 5. New Mexico state police narcotics agents were verbally informed of the outstanding warrant. 6. Contact with the informer was through an Amarillo telephone number; this number turned out to be the telephone number of the informer's father; the informer had given this number to Officer Franco to use in an emergency. Franco had been given this number before the informer left Chaves County. When Franco first called this number, during the Amarillo affair, the informer's father advised Franco that he had not seen his son in two months. 7. Later, however, Officer Franco talked to the informer on the telephone, the informer refused to reveal his location, indicated he was scared of being killed and told Franco he would call back in 30 minutes. He did not do so.

There is nothing indicating the whereabouts of the informer was known to any of the parties at the time of trial or would ever be available as a witness. Thus, the motion for continuance was properly denied. *State v. Brewster,* 86 N.M. 462, 525 P.2d 389 (Ct.App.1974).

■ Defendant emphasizes that Franco, a state police narcotics officer, presumably aware of the material witness warrant, never tried to contact the informer by using the telephone number (item 6 above) prior to the Amarillo affair. However, during argument the defense attorney informed the trial court that even if Franco had used the telephone number at an earlier time, there was no assurance that the informer could have been located.

The above facts support the trial court's denial of the motion to dismiss, support the trial court's implied finding that the prosecutor could not be reasonably expected to produce the informer, and support the trial court's implied finding that the State had been diligent regarding the informer's disappearance. The essence of defendant's appellate contention is that the facts require us to hold the prosecutor was negligent as a matter of law. We disagree; under the facts, the decision was properly made by the trial court.

*Entrapment as a Matter of Law*

■ According to the defendant, (1) the informer told defendant he wanted to "burn" a guy to make some money, and asked defendant's help in doing so; (2) defendant refused, but after the informer "bugged" him for 20 minutes, agreed to help in order to get the informer "off my back"; (3) that when the informer and de-

fendant approached the place of sale, the informer handed defendant a balloon; that at that time defendant did not know the contents of the balloon; (4) that the informer told defendant that the contents were "bad stuff that was no good", "you wouldn't get a high fly"; (5) that at the sale, the price was agreed on between the informer and the agent; and (6) after the sale, defendant gave the money to the informer.

Inasmuch as this testimony goes to dealings between the unavailable informer and defendant, it is not directly contradicted. Defendant asserts that this evidence shows entrapment as a matter of law. We disagree.

Defendant and the agent agree that defendant is the one that sold the balloon, containing heroin, to the agent and took the money in payment. Defendant admitted to at least one prior use of heroin and had heard that the informer was a heroin user. Defendant testified that he had known the informer for a "couple of months" prior to the sale, but was not a close friend of the informer. This evidence and the inferences therefrom raise question as to the credibility of defendant's testimony that he was an unwary innocent who cooperated with an acquaintance to pass "bad stuff" to a stranger, with no monetary reward for doing so.

Under the evidence, the issue of entrapment was properly submitted to the jury; there was no entrapment as a matter of law. *State v. Fiechter,* 89 N.M. 74, 547 P.2d 557 (1976).

*Jury Selection*

In *State v. Herrera,* 82 N.M. 432, 483 P.2d 313 (Ct.App.1971), cert. denied, 404 U.S. 880, 92 S.Ct. 217, 30 L.Ed.2d 161 (1971), the defendant contended that he had been denied a fair and impartial trial because some of the members of defendant's trial jury had served as jurors at the trial of other defendants charged with similar but independent offenses, and prosecution witnesses at the trials of other defendants also testified against defendant at his trial. We did not answer defendant's claim in *Herrera* because it lacked a factual basis.

In this case there is a factual basis for such a claim. Seven of defendant's trial jurors had served on at least one heroin trafficking case in which there were convictions; prosecution witnesses in those trials would also be called at defendant's trial. Do those facts show that defendant was denied a fair and impartial jury?

Annot., 160 A.L.R. 753 (1946) refers to the following situations:

1. At page 755, the Annotation states: [I]t seems to be well settled that where a juror has sat on the trial of one defendant in a criminal proceeding resulting in a conviction, he is not competent to serve thereafter on the jury in a proceeding against another defendant also charged with the commission of the same single offense involved in the prior case . . .

2. At page 762, the Annotation states: A juror is not disqualified to serve in a criminal case upon the ground of impartiality, or otherwise, merely by reason of the fact that he theretofore sat on the jury in the trial of another defendant for a like offense, but arising out of a separate and distinct transaction from that in the pending cause, and having no connection therewith other than the similarity in the nature of the crime charged, and thus distinguishable from the situation where there are successive trials of defendants charged with the commission of the same single offense . . . .

3. At page 767, the Annotation states: While there is virtually complete agreement in the cases upon the proposition that a juror is not disqualified to serve in a criminal trial merely by reason of his prior jury service in the trial of another defendant charged with a similar but independent criminal offense, a sharp conflict has arisen with respect to the effect of the fact that identical witnesses are used by the prosecution to establish the similar but disconnected criminal acts . . . .

Item 1, above, is not involved in this appeal. Item 2 does not support defendant;

rather, it supports the jury selection in this case because defendant's offense was separate and distinct from the prior narcotics trials. Item 3 is the situation before us; the prior trials and defendant's trial involved the same prosecution witnesses. The sharp conflict reported as to the item 3 situation is reflected in the differences among the judges in *Casias v. United States,* 315 F.2d 614 (10th Cir. 1963).

The asserted denial of a fair and impartial jury was raised in two ways: (1) defendant moved to strike the jury panel or, alternatively, to continue the case until a new jury panel was called, and (2) defendant challenged for cause the jurors with prior service in the item 3 situation.

■ Inasmuch as the asserted unfairness involves specific jurors, in this case eleven jurors of a panel of fifty-one, the attack on the entire panel was without merit. *Government of Virgin Islands v. Williams,* 476 F.2d 771 (3rd Cir. 1973); see *Casias v. United States,* supra. The item 3 situation is before us on the basis of the challenges for cause.

■ The essence of defendant's claim is that prior jury service involving the same prosecution witnesses in itself disqualified the jurors from service as jurors at defendant's trial. We do not believe such a per se rule of disqualification is appropriate. Our view is stated in *Government of Virgin Islands v. Williams,* supra:

> [A]bsent some evidence of actual partiality, a juror is not disqualified merely because he previously sat in a similar case arising out of a separate and distinct set of circumstances even though the offenses charged in the cases are similar and some of the same prosecution witnesses testify in each case.

See *United States v. Ragland,* 375 F.2d 471 (2d Cir. 1967), n. 2; *Wilkes v. United States,* 291 F. 988 (6th Cir. 1923), cert. denied, 263 U.S. 719, 44 S.Ct. 181, 68 L.Ed. 523 (1924); *Hill v. State,* 348 So.2d 848 (Ala.Cr.App. 1977); *Holland v. State,* 260 Ark. 617, 542 S.W.2d 761 (1976); *State v. Dixon,* 560 P.2d 318 (Utah 1977).

■ The voir dire in this case failed to establish partiality upon the part of any juror. The trial court asked prospective jurors about service in prior narcotics cases and about cases involving the same witnesses. They indicated they could try defendant solely on the evidence and instructions in defendant's case. Defense counsel asked prospective jurors whether they thought certain police officers were believable; most thought they were. The State then asked whether the prospective jurors would believe police officers any more than any other witness; the response was they would not. See *State v. Alderette,* 86 N.M. 600, 526 P.2d 194 (Ct.App.1974). There is nothing indicating the jurors who served at defendant's trial were not fair and impartial. Thus, there is no basis for holding the trial court abused its discretion in denying the challenges for cause. *Government of Virgin Islands v. Williams,* supra.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.