THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NEAL MARTIN, Defendant-Appellant.

Third District   No. 3—83—0537

Opinion filed May 31, 1984.

Michael D. Ettinger, of Oak Lawn, and John O'Toole, of Chicago, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Neal Martin, was found guilty following a jury trial in the circuit court of Will County of the unlawful delivery of a controlled substance, cocaine. The defendant appeals contending (1) that the manifest weight of the evidence established the defense of entrapment as a matter of law; (2) that the jury was not properly instructed; (3) that the defendant's prior convictions were improperly admitted into evidence for purposes of impeachment; (4) the prosecutor's closing argument was prejudicial and deprived the defendant of a fair trial.

The evidence indicated that the 21-year-old defendant worked for his parents in the family jewelry business and after work would go to public lounges and pass out his business cards and sell small pieces of jewelry.

In April of 1979, the defendant met an individual who came to be known as Crazy John Nello. Nello asked him if he had any cocaine and if not, if he wanted any. The defendant replied that he didn't have any and didn't want any. The defendant said that he had never used cocaine.

Nello told the defendant that he could help him sell a lot of jewelry, which he did, and they exchanged phone numbers and Nello called him daily.

The defendant began attending parties at Nello's house which were attended by a number of girls and where everyone was using cocaine except the defendant. Finally, in late May and early June, 1979, the defendant began to give in to Nello's pressure to use drugs and began to use the drugs which Nello supplied without charge. By the end of June, Nello was pressuring the defendant to deliver cocaine for him but the defendant refused.

By the end of June the defendant had stopped working and his parents sent him to New Mexico in the hopes he would stop using drugs. While out from under Nello's influence, the defendant stopped using drugs.

During July and August, 1979, while the defendant was recovering in New Mexico, Nello called his parents at least 30 times.

When the defendant returned home, he fell under the influence of Nello again and became a user of narcotics.

The defendant's testimony was corroborated by members of his family, including his mother, sister and brother-in-law.

The defendant lost interest in his family's business, wouldn't get up for work and appeared to be constantly under the influence of drugs.

By September of 1979, the defendant had finally agreed to deliver drugs for Nello and was introduced by Nello to two undercover agents for the Department of Law Enforcement. Nello told the defendant

that he owed the two men a great deal of money and he would not get paid if they knew it was Nello's cocaine. The two men were Carlos Hevia and John Beck, undercover narcotics officers for the Illinois Department of Law Enforcement.

On September 4, 1979, the defendant was high on drugs and Nello had told him that since Nello had sent him a number of jewelry customers, he owed Nello a favor. Nello and the defendant entered the Old Town Tap, a local tavern, and met with Hevia and Beck. The defendant recognized that Hevia was wearing jewelry from the family business and that Nello had claimed Hevia was interested in purchasing more jewelry. The defendant showed Hevia certain chains and charms he had with him but could not make a sale. Either Hevia or Beck asked the defendant if he had the cocaine and the defendant handed them a package and collected $560 which he promptly turned over to Nello as soon as they left the bar. Hevia testified that their informant was paid $20 for setting up the September 4 transaction.

On September 5 the defendant received a call from Hevia at the jewelry store. Hevia wanted to buy more cocaine. The defendant replied that he was not in the drug business but the jewelry business. The defendant tried to convince Hevia to buy some more jewelry, but all Hevia was interested in was cocaine. Hevia continued to call the jewelry store on a daily basis but the defendant refused every call except one.

On September 13 the defendant went to a party at Nello's residence and was told that it was necessary that he do one more favor for Nello. The defendant refused. Nello said that he was in trouble and promised that this would be the last time.

On September 14 the defendant called Hevia and asked him to meet him at Denny's Restaurant. Nello had given him a package of cocaine and the defendant was told to collect $2,775. The defendant delivered the package to the agents and collected the money for Nello which was given to him at his home. Nello received $175 from the agents for setting up the September 14 transaction.

On September 15 Hevia called the defendant for more cocaine. The defendant refused. Hevia continued to call him but the defendant refused to see him again.

The defendant was later arrested and charged with the unlawful delivery of a controlled substance as a result of the September 14 transaction alone.

■ The entrapment defense involves two primary factors, *i.e.*, (1) whether the defendant was influenced or induced to commit the offense by governmental officials or someone working with the govern-

ment; (2) whether the defendant was predisposed to commit the offense involved. *People v. Myers* (1980), 92 Ill. App. 3d 229, 415 N.E.2d 1108; *People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096; *People v. Spahr* (1978), 56 Ill. App. 3d 434, 371 N.E.2d 1261; *People v. Hall* (1962), 25 Ill. 2d 297, 185 N.E.2d 143.

■ While the People are correct that there is no rule establishing entrapment as a matter of law solely because the government provided the controlled substance which the accused was charged with delivering (*People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812), it is persuasive evidence that if the substance was supplied by the government or its paid informer and the State fails to call the informer to rebut the defendant's testimony that the informant supplied the drugs to the defendant, a conviction for selling the drugs may not be sustained (*People v. Dillard* (1979), 68 Ill. App. 3d 897, 386 N.E.2d 920; *People v. Spahr* (1978), 56 Ill. App. 3d 434, 371 N.E.2d 1261).

We also subscribe to the rule of law that an appellate court must not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses and that a reversal of the defendant's conviction should not result unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Dempsey* (1980), 82 Ill. App. 3d 699, 402 N.E.2d 924.

We believe that despite the fact that every appellate decision should try to adhere to the foregoing principle of law whenever possible, there is an occasional instance where the evidence is simply so wanting that an affirmance is impossible. This case falls into such a category.

■ Our review of the evidence reveals that but for the unrelenting coercion of the paid informant in the case at bar, who did not come forward to rebut the fact that he was not only the source of the narcotics but the prime mover in their distribution, the defendant would never have been predisposed to commit the offense in question.

Based upon the foregoing evidence, we cannot say beyond a reasonable doubt that the idea for the crime charged originated with the defendant. *People v. Dempsey* (1980), 82 Ill. App. 3d 699, 402 N.E.2d 924.

For these reasons, it is unnecessary that we pass upon the remaining issues presented for review, and the judgment of the circuit court of Will County is hereby reversed.

Reversed.

HEIPLE and STOUDER, JJ., concur.