742 P.2d 1043

**Ruben BACA, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 17193.**

Supreme Court of New Mexico.

Sept. 14, 1987.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for petitioner.

Hal Stratton, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for respondent.

**OPINION**

SOSA, Senior Justice.

This appeal is before us on petition for writ of certiorari to the court of appeals. Defendant-petitioner Ruben Baca (Baca) appeals his conviction on one count of trafficking in cocaine. Specifically, Baca appeals the trial court's denial of his motion for directed verdict, alleging that the state failed to rebut Baca's defense of entrapment. In a memorandum opinion, the court of appeals affirmed the trial court. After reviewing the record, the court of appeals' file, and petitioner's brief, we reverse.

**FACTS**

Since the trial court gave the requisite instruction to the jury on entrapment, SCRA 1986, 14–5160, Baca is required here to establish as a matter of law that the facts before us constitute the defense of entrapment. We find that Baca meets this requirement.

During the period March-June, 1986, the New Mexico State Police were using the services of an informer named Billy Granger in conducting undercover operations designed to arrest persons trafficking in narcotics. Baca was at Granger's house on the evening of June 10, 1986, when Gran-

ger introduced Baca to Officer Carl Work, an undercover agent who was working with Granger. Baca could not speak English and Work could not speak Spanish. Granger spoke both languages and thus acted as an interpreter, telling Work that Baca could purchase cocaine for Work. Work had never met Baca before.

The sale of cocaine from Baca to Work was conducted in the following manner. Granger and Baca drove with Work to a trailer which the two of them entered as Work waited in the car. The pair returned to the car and drove with Work to a local bar. Baca entered the bar alone, staying so long that Work became impatient, ordering Granger to go into the bar and bring Baca back outside. Upon returning to the car, Baca handed Work a package of material which Work believed to be cocaine, and for which Work paid Baca $130.

At trial, Baca testified that he had gone to Granger's house to buy marijuana, and had driven around town with Granger, getting progressively inebriated by drinking beer. Baca testified that when they returned to Granger's house Granger proposed that Baca sell cocaine to "a friend" of Granger's, whom Granger was afraid to deal with because Granger owed the friend money. Baca and Granger picked up the cocaine at the trailer, with Granger buying the cocaine and giving it to Baca. Upon arriving at the bar, Baca stayed inside playing pool and drinking beer until Granger asked him to exit and sell the cocaine to Work.

The officer supervising the undercover operation had learned of Granger's record for felony marijuana convictions and had proposed to the local district attorney that Granger be given early release in exchange for Granger's "making" twenty cases for the police. At trial, the supervising officer testified that he mistrusted Granger because the latter had lied while helping the police investigate two earlier cases. Work too testified that he mistrusted Granger, because the latter was "working off charges."

## THE DEFENSE OF ENTRAPMENT

The sole issue is whether as a matter of law these facts constitute entrapment. We answer in the affirmative. In reaching this conclusion, we rely on *State v. Fiechter*, 89 N.M. 74, 547 P.2d 557 (1976), the foundational authority in New Mexico on the defense of entrapment. In *State v. Fiechter*, we held that the key issue for the trier of fact where the defense of entrapment is asserted is the defendant's predisposition to commit the crime. We thus opted entirely for the *"subjective* standard" approach, and ignored the *"objective* standard" in which the trier of fact, in determining whether there was entrapment, considers any misconduct of the police. In adopting the former approach, we stated, "[U]nder the subjective standards we approve today, it is rare indeed when entrapment may correctly be held to exist as a matter of law." *Id.* at 77, 547 P.2d at 560. We feel that our opinion in *Fiechter* is correct insofar as it focuses upon a defendant's predisposition to commit a crime, but *Fiechter* needs to be expanded to make allowance for an objective standard.

The objective/subjective debate has continued unchecked since the first entrapment case was decided by the United States Supreme Court in *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). In that case the court held, "[T]he Government cannot be permitted to contend that [a defendant] is guilty of a crime where government officials are the instigators of his conduct," *id.* at 452, 53 S.Ct. at 216, a rule which gave rise to the objective criterion for defining entrapment. Yet, because it referred to the defendant's predisposition, *id.* at 451, 53 S.Ct. at 216, the Supreme Court suggested that entrapment was to some extent also based on a subjective standard. As a result, *Sorrells v. United States* set the courts of this country off in an often confusing search for the perfect definition of entrapment— one which would balance the objective prong of *Sorrells* (misconduct of the police) against the subjective prong of that decision (predisposition of defendant). In *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the Su-

preme Court stayed with the rationale established in *Sorrells*, but failed to establish any criteria for determining what conduct would establish the defendant's predisposition.

In *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), after concluding that there was no police misconduct, the court held that a finding of predisposition is "fatal to [a] claim of entrapment," *id.* at 436, 93 S.Ct. at 1645. In *Fiechter*, we relied on *United States v. Russell*, overruling *State v. Sainz*, 84 N.M. 259, 501 P.2d 1247 (Ct.App.1972), which in turn had relied on the Ninth Circuit decision overruled in *Russell*. In *Russell* the trial court had not been presented with the question of whether entrapment existed as a matter of law, but with a factual dispute which had to be decided by the jury, and the jury found that the idea for the commission of the crime originated with the defendant and not with the police. Thus, reading the decision in *Russell* in light of the court's previous decisions, *Russell* merely stands for the proposition that police misconduct is not the sole determinant in defining entrapment.

The Supreme Court's latest ruling on entrapment is *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), a decision which has not clarified the law. The defendant in *Hampton v. United States* did not contest his predisposition to commit the crime. Instead, he argued that police misconduct leading to his arrest violated constitutional due process, an argument rejected by a plurality of the court, who concluded that predisposition is a more crucial element in the definition of entrapment than alleged police misconduct. Because of the split among the justices, *Hampton* added little to the debate over objective versus subjective standards.

As a result, the leading authority for the objective-standard definition of entrapment remains *United States v. Bueno*, 447 F.2d 903 (5th Cir.1971) *reh'g denied, cert. denied*, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973). In that case, one government agent supplied the illicit drug and another induced the defendant to act as a go-between, giving the defendant the money to be delivered to the first agent. By the subjective standard adopted in *Fiechter*, this factual situation would not lead to a reversal of conviction unless the defendant could negate his predisposition to commit the crime. We feel that the *Fiechter* rule as thus defined is too narrow, and should be expanded to include a factual situation similar to that in *United States v. Bueno*, i.e., a situation which, as the court in *Bueno* stated, "takes on the element of the government buying [narcotics] from itself, through an intermediary, the defendant, and then charging him with the crime." *Id.* at 905.

A number of states have adopted a rule similar to the *Bueno* rule. *See People v. Martin*, 124 Ill.App.3d 590, 79 Ill.Dec. 933, 464 N.E.2d 837 (1984); *State v. Branam*, 161 N.J.Super. 53, 390 A.2d 1186 (1978) *aff'd per curiam*, 79 N.J. 301, 399 A.2d 299 (1979); *Sylar v. State*, 340 So.2d 10 (Miss. 1976); *People v. Stanley*, 68 Mich.App. 559, 243 N.W.2d 684 (1976).

The case before us presents a perfect illustration of why something more than a subjective standard is needed to define entrapment. It was the police informant Granger who procurred the cocaine, and it was he who arranged for the purported sale between Baca and Work. Baca acted as nothing more than a conduit, conveying cocaine from a police informant to a policeman. Such detailed involvement on the part of the police in the cocaine transaction exceeds proper investigative procedure, and puts the police into the category of "instigators" of the criminal conduct, as defined by the Supreme Court in *United States v. Sorrells:* "It is not [the duty of the police] to incite to and create crime for the sole purpose of prosecuting and punishing it." *Id.* 287 U.S. at 444, 53 S.Ct. at 213 (quoting *Butts v. United States*, 273 F. 35, 38 (8th Cir.1921)).

■ Under the objective standard adopted in this opinion we hold that Baca was improperly induced by the police into such criminal conduct as he was found to have committed, and that, as a matter of

law, he was entrapped. In expanding the rule adopted in *Fiechter*, we thus hold that a criminal defendant may successfully assert the defense of entrapment, *either* by showing lack of predisposition to commit the crime for which he is charged, *or*, that the police exceeded the standards of proper investigation, as here where the government was both the supplier and the purchaser of the contraband and defendant was recruited as a mere conduit. Our adoption of the objective standard is to be given modified prospective application, so that only defendants who have asserted the defense of entrapment before their case has proceeded to trial may rely on our decision, and then only so long as their case has not proceeded to trial before the date that this decision has been filed with the clerk of this court.

The court of appeals opinion affirming the trial court is reversed.

IT IS SO ORDERED.

WALTERS and RANSOM, JJ., concur.

SCARBOROUGH, C.J., and STOWERS, J., dissent.

SCARBOROUGH, Chief Justice, dissenting.

I dissent.

In this case, the majority relies upon police "misconduct" in order to reverse a jury verdict. Before examining the conduct of the police, however, we should note that Baca (defendant) admitted the essential facts supporting his conviction for trafficking in cocaine. Furthermore, defendant does not claim he is innocent of the offense, nor does he claim that he was in any manner threatened or coerced by the police into committing the offense.

The majority concludes that defendant was improperly induced to make the drug sale upon which his conviction is based. The evidence relied upon by the majority to support this conclusion consists of instances where the police informer Granger "proposed" that defendant sell cocaine and "asked" defendant to sell cocaine. Such action by a police informer and collabora-

tor, however, is no reason to upset a jury verdict. It was for the jury to decide whether defendant was entrapped, *see* State v. Romero, 86 N.M. 99, 519 P.2d 1180 (Ct.App.1974), and it rejected defendant's entrapment defense. I would therefore affirm the trial court and Court of Appeals.

Moreover, there is substantial evidence to support the jury's verdict and its determination that defendant was predisposed to commit the crime for which he was convicted. It is not as if defendant was set up by the police. Defendant admits he went to the informer's residence in order to purchase drugs for his own use; he admits drinking beer over an extended period of time with the informer; he admits traveling with the informer to another drug transaction; he admits letting the informer inject him with cocaine with no more than a verbal protest; but most important, defendant admits selling cocaine.

In order to get around the substantial evidence of Baca's guilt of trafficking in cocaine, the majority has rewritten the New Mexico law of entrapment. The standard of review adopted by the majority will prevent the state as a matter of law from utilizing undercover agents and collaborators on opposite sides of an illegal drug transaction. *Cf. State v. Alvarez*, 93 N.M. 761, 605 P.2d 1160 (Ct.App.), *rev'd on other grounds*, 92 N.M. 44, 582 P.2d 816 (1978) (use of police informer and undercover agent on opposite sides of an illegal drug transaction did not establish entrapment as a matter of law).

The conduct of the police was properly examined by the jury in this case. The jury's verdict should stand.

STOWERS, Justice, dissenting.

I dissent. I also join in the dissent filed by Chief Justice Scarborough.

The majority in this case indicate that the issue is whether entrapment has been established. They further indicate in reaching this conclusion that they are relying on the case of *State v. Fiechter*, 89 N.M. 74, 547 P.2d 557 (1976). The *Fiechter* case specifically adopted and approved the sub-

jective standard and rejected other concepts previously adopted in other cases. *See State v. Jackson,* 88 N.M. 98, 101, 537 P.2d 706, 709 (Ct.App.1975). A review of the facts in this case indicate that the defendant was seeking marijuana, was willing to associate with Granger the informant, went along with him in the activities in the course of the evening, and eventually, in fact, did sell the drug in question for which he was convicted.

The holding of the *Fiechter* case is clear and specific, and unless it is overruled, continues to be the appropriate law on entrapment. I think that the *Fiechter* case is good law and that it was appropriately applied in this case. Further, I think it appears from the facts in the case that there was sufficient evidence to establish that the defendant intended to commit the offense. *See State v. Hutchinson,* 99 N.M. 616, 624, 661 P.2d 1315, 1323 (1983). As we have said many times, evidence is to be viewed in the light most favorable to the prevailing party, and all conflicts are resolved and all permissible inferences are indulged in favor of the jury's verdict. *See State v. Vigil,* 103 N.M. 643, 647, 711 P.2d 920, 924 (Ct.App.1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986). For these reasons, I believe that the decision of the court of appeals appropriately dealt with this issue and should be affirmed. Therefore, I dissent from the opinion filed herein.