**UNITED STATES of America, Plaintiff,**

v.

**Larry R. KILLOUGH, Defendant.**

**No. LR–CR–84–97.**

United States District Court,
E.D. Arkansas, W.D.

April 8, 1985.

On Request for Evidentiary
Hearing April 8, 1985.

---

6. The Government's motion for detention without bond is denied.

Dale Price, Little Rock, Ark., Comer Boyette, Searcy, Ark., for plaintiff.

Robert J. Govar, Asst. U.S. Atty., Little Rock, Ark., for defendant.

## ORDER

EISELE, Chief Judge.

The government has filed a motion to quash the subpoenas directed to the Assistant United States Attorney Robert J. Govar. The defendant subpoenaed Mr. Govar to appear at a hearing previously scheduled by the Court for March 28, 1985, and also to appear as a witness for the trial on May 6, 1985. Since the defendant has made no showing that the testimony of Mr. Govar is necessary or that he possesses information vital to the defense, the government's motion to quash said subpoena will be granted. See discussion in order entered this date on the defendant's request for a pretrial evidentiary hearing.

In the light of the above ruling, the Court feels it necessary to make known to the parties its views on the issues to be tried to the jury. Only issues related to the guilt or innocence of the defendant to the crimes charged will be tried out to the jury. The defendant will not be permitted to explore the motives or actions of government agents "behind the scenes" unless they can be shown to bear in some way upon the guilt or innocence of the defendant of the crimes charged. The motives and the behind the scenes actions of government agents might possibly bear upon the defendant's official conduct entrapment theory, but if this issue is to be tried out at all, it must be before the Court and not the jury since it does not bear upon the defendant's guilt or innocence. The official misconduct entrapment theory assumes the guilt of the defendant under the ordinary entrapment defense but, in effect, states that, for due process reasons, the government should be deprived of the benefits of the conviction and the indictment must be dismissed because of the outrageous conduct of the government in the prosecution of the case. As indicated in the Court's order denying a pretrial hearing, the Court may or may not look further into defendant's official conduct entrapment theory depending upon how it views the evidence received during the jury trial. But the Court wants to make it clear to the parties that it does not intend to permit this issue to be tried out before the jury.

It is therefore Ordered that the motion of the United States to quash be, and it is hereby, granted.

## ON REQUEST FOR EVIDENTIARY HEARING

Pending before the Court is defendant's response to the Court's order of March 27, 1985. In the March 27 order, the Court denied defendant's request for an evidentiary hearing on defendant's motion to dismiss. Defendant believes that both the defenses of conventional entrapment and of government conduct entrapment warrant dismissal of the indictment. Defendant

also believes that he is entitled to a hearing to bring forward his evidence of entrapment. In its March 27 order, the Court determined that the defense of entrapment is properly resolved at trial and not at a pretrial evidentiary hearing. The Court found that a pretrial hearing would not conserve the resources of the Court and parties, and could well waste those resources.

In its March 27 order, the Court permitted defendant to specifically identify by affidavit or otherwise any evidence relevant to entrapment which could not be brought forward at trial. Defendant was given this opportunity because certain allegations concerning behind-the-scenes activities of Assistant United States Attorney Bob Govar could not be examined during the trial. Because Mr. Govar is the prosecuting attorney, he could not also be a witness at trial.

Defendant has taken the opportunity to respond to the Court's order. In that response, defendant again argues that he is entitled to dismissal under the conventional defense of entrapment. Defendant states, "When there is a total lack of predisposition proof or where reasonable men could not find such proof, entrapment is a question of Law for the Court and the defendant should not be put to trial on the charges."

■ As stated in its prior order, the conventional concept of entrapment is that a criminal intent is deliberately implanted in the mind of an innocent person by government agents. *United States v. Quinn,* 543 F.2d 640 (8th Cir.1976). Conventional entrapment centers on the defendant's predisposition to commit the crime. Where the evidence of entrapment is conflicting, the question is one of fact for the jury, with the burden on the government to prove absence of entrapment. *Id.* Also as stated in its prior order, the defendant has not cited any case and the Court knows of no case where the defense of entrapment was resolved other than at trial.

■ Defendant nonetheless continues to argue, without authority, that the defense of entrapment should be resolved at a pretrial evidentiary hearing. The Court continues to reject the notion. If the defense of entrapment, generally a fact question, had to be first considered by the Court in the context of a motion to dismiss and pretrial hearing, the result would be, in effect, to hold two trials. And, assuming a fact question did exist, it would be an invasion of the jury's prerogatives for the Court to substitute its factual finding for those that a jury might make. The Court would be most reluctant to establish such a precedent. When the government contends that a factual issue will be made on the issue of entrapment, the Court should accept that contention in good faith. Of course, if it turns out that the defendant is right and that there is no factual issue, the Court can handle that at the trial. Further, in the instant case, the government has done more than merely contend that a factual issue exists. It has attempted to demonstrate that a factual question does exist. For instance, the government states that it was told by Tommy Williams that the defendant was, at an earlier date, selling him prescriptions (not for medical purposes). The Court is convinced that it should not attempt to resolve this issue at a pretrial evidentiary hearing.

■ The Court is also not willing to hear the issue of government conduct (or, better, "misconduct") entrapment at a *pretrial* hearing. Government conduct entrapment occurs where governmental participation is so outrageous or fundamentally unfair as to deprive the defendant of due process or as to move the courts to exercise their supervisory jurisdiction over the administration of criminal justice. Because government conduct entrapment is a question for the Court, the notion of a pretrial evidentiary hearing is not as far fetched as it is in the context of conventional entrapment. The Court, however, is still convinced the notion is flawed and that the better practice will usually be to resolve the factual issues concerning governmental abuse *at* or *after* the trial. Obviously,

much of the evidence relevant to government conduct entrapment will be substantially the same evidence which would be brought forward at trial. Thus, even if a pretrial hearing would obviate the need for a trial, no appreciable resources are conserved.

As previously mentioned, the instant case is somewhat unusual in that some of defendant's government conduct allegations are directed at Assistant United States Attorney Bob Govar, the trial attorney in charge of this case. Such allegations, assuming for the moment that they raise jury issues, could not appropriately be explored or addressed at trial unless Mr. Govar was required to step aside. But do those allegations raise any issue with which the jury is, or should be, concerned?

In response to the defendant's motion to dismiss, Mr. Govar has submitted a seven-page affidavit which details his involvement in the case and in which he denies that he acted improperly. In its March 27 order, the Court directed the defendant to submit its evidence that Mr. Govar's affidavit is incorrect. Defendant has attempted to do so.

In its response, defendant first disputes Mr. Govar's characterization of his behind-the-scenes involvement as being "minimal." Defendant believes the characterization is disputed by five criminal investigation reports made by state police investigator Chris Anderson. These reports indicate that Mr. Govar met with state police and that he played a role in directing the investigation of defendant. However, that is precisely what assistant U.S. attorneys do on a daily basis in the discharge of their responsibilities.

One report states that after reviewing the case, Mr. Govar asked that the government informant, Tommy Williams, be sent back to the defendant's office at least two more times. Another report states that activities were planned at a meeting between Mr. Govar and three state police investigators. Another report states that Tommy Williams called the defendant and arranged for the transfer of money "as per instructions of Mr. Govar." The Court believes that none of these reports reflect any improper conduct on the part of Mr. Govar.

Defendant also submits in its response various affidavits to show that Mr. Govar acted improperly. The affidavit of the defendant states that on September 27, 1984, he was contacted by the government informant, Tommy Williams. Mr. Williams then informed him for the first time that Assistant U.S. Attorney Govar and state officers had "entrapped" him into writing prescriptions. Mr. Williams told the defendant that Mr. Govar was mad at him because of the defendant's testimony in a prior case. Mr. Williams also is alleged to have told the defendant that Mr. Govar wished "to nail [the defendant's] ass to the wall" and further, that Mr. Govar wished to "make an example of [the defendant] which would tighten the asshole of every doctor in the state, regardless of whether [the defendant] was convicted or not." While the Court understands that the defendant may feel abused, his affidavit creates no factual basis for a finding of outrageous prosecutorial conduct even if Mr. Williams would testify that Mr. Govar himself made such statements directly to, or in the presence of, Mr. Williams.

Another affidavit is submitted by William Trice, a member of the law firm representing the defendant. Mr. Trice states that during interviews with Mr. Williams, Mr. Williams told him that he believed Mr. Govar had it in for the defendant because of a previous trial. Mr. Williams also told Mr. Trice that Mr. Govar approved the activities in the investigation. Regarding the September 27, 1984, conversation between the defendant and Mr. Williams, Mr. Williams told Mr. Trice that he told the defendant on September 27, "Now this is not a quote because I heard, this is hearsay, but was told that Larry Killough was in a trial testifying for the defense of a drug company and that he lied during the conversation." Mr. Williams also told Mr. Trice that he heard the above statement from state police investigator Chris Anderson. Mr. Williams further told Mr. Trice

that he had told the defendant that Mr. Govar was prosecuting this action because he believed it would stop a lot of other doctors from doing the same thing.

Mr. Williams himself has also submitted an affidavit. In his affidavit, Mr. Williams states that on September 27, 1984, he told the defendant that Mr. Govar was after him because Mr. Govar thought he [the defendant] had lied in a previous trial. The Court views it as significant that Mr. Williams does not state that Mr. Govar himself told Mr. Williams anything about the defendant.

The third major area treated in defendant's response to the Court's order concerns the defendant's lack of predisposition. Because the Court views the issue concerning defendant's predisposition an issue for trial, the Court will not review defendant's evidence in this respect.

The defendant has summarized its argument concerning why Mr. Govar is needed as a witness at trial by stating that "his testimony is necessary to defendant's case to establish the nature and extent of Government Agent's participation and their motivation, the actual entrapment and the lack of investigation by the United States Attorney or any other law enforcement agent involved concerning whether Dr. Killough was predisposed to prescribe drugs for non-medical purposes prior to obtaining the indictment, or to bribe witnesses." Most of this information will probably not be admissible at the jury trial because it will be irrelevant to the issue of the guilt or innocence of the defendant. See discussion in the order entered this date upon the government's motion to quash subpoenas.

After considering defendant's response, the Court continues to believe that a pretrial evidentiary hearing would be inappropriate and is unnecessary. While the documents concerning Mr. Govar's involvement in directing the investigation may indicate that Mr. Govar's participation was more than minimal, they do not indicate that Mr. Govar acted improperly. As stated by the court in *Quinn, supra,*

[I]nvestigative officers and agents may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process or evoke the exercise by the courts of their supervisory powers so as to deny to the officers the fruits of their misconduct. 648.

The Court has examined defendant's fifteen exhibits and his arguments. It concludes that the defendant has not made a showing which would warrant holding a pretrial evidentiary hearing on defendant's official conduct entrapment theory. If, after appraising the evidence introduced at the trial concerning the conventional entrapment defense, the Court changes its mind it can schedule a post-trial hearing on the issue.

It is therefore Ordered that defendant's request for a pretrial evidentiary hearing be, and it is hereby, denied.