Timothy S. GITARY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 76A03–8607–CR–188.

Court of Appeals of Indiana,
Third District.

Feb. 19, 1987.

John F. Surbeck, Jr., Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Timothy S. Gitary guilty of dealing in cocaine, a class B felony,[1] and dealing in marijuana, a class D felony.[2] In his appeal, Gitary raises the following issues:

1. Whether the evidence was sufficient to overcome his defense of entrapment,

2. Whether the court abused its discretion by giving final instruction six to the jury,

3. Whether the court abused its discretion by refusing to give Gitary's tendered instructions one and two, and

4. Whether the court abused its discretion by excluding evidence which Gitary claims tended to show a conspiracy against him.

We affirm.

In 1982, Michael Hughes was an informant for the Indiana State Police. Hughes and the defendant, Gitary, were co-workers at Consolidated Freightways in Fort Wayne, Indiana. On several occasions, Hughes and Gitary smoked marijuana together while at work.

Hughes introduced Gitary to Douglas Schultz, who posed as Hughes's brother, but who was actually an undercover detective with the Indiana State Police. On June 6, 1983, Hughes informed detective Schultz that Gitary had marijuana for sale.[3] Hughes and Shultz then drove to Gitary's home. When they arrived, Gitary told them he did not have the marijuana yet, but that he would have it soon.

Later, the men met at a tavern. They went out to the parking lot and got into Gitary's van. Gitary pointed to a brown paper bag and told Schultz to open it. Inside the bag were seven clear plastic bags containing what appeared to be marijuana. Schultz testified as follows:

I asked him how much a quarter pound would be and he told me, "Well, it's $50.00 a bag so four bags'd be $200.00."
I asked him, "Well, do I get a break for buyin' four of 'em?" and he said, "No" cause he had to pay fifty for 'em and he said whenever anybody at work gets some pot they just sell it to the other guys for the same price they get it, so I chose four of the bags and paid him $200.00.
And did you have any other conversation?
Yes, sir.
And what was that conversation?
Mr. Gitary advised me when he'd been in Florida he could've bought a pound for $350.00 but, you know, nobody up here had enough money to go down and get it. I then asked him, I said, "Well, it could just be a steady thing" referring to buying the marijuana, and he said, "Well, it should be." He said his supplier had a pound of this marijuana left, meaning what I'd just bought, and he should be getting some more in but he didn't know what the quality or the price would be, so I said, "Well, I'll probably be getting ahold of you later," and he said, "Okay." So we got out of the van, I thanked him and left.

The second transaction occurred on June 14, when the men again met at Gitary's van. This time when Gitary opened the brown paper bag, Schultz saw approximately ten clear plastic bags containing what appeared to be marijuana. Schultz picked out four of the bags and paid Gitary

1. Ind.Code 35–48–4–2(1).

2. I.C. 35–48–4–10(a)(1).

3. Hughes testified at trial that "a lot of people there [at Consolidated Freightways] got their dope from Tim."

$200.00. Schultz was told by Gitary to let him know if either Schultz or Hughes wanted any more marijuana.

Before Schultz got out of the van, he saw a mirror lying on the floor with a picture of a razor blade etched onto it. Schultz testified regarding the mirror's significance:

Now in the drug culture a mirror and a razor blade means cocaine, so I asked him if there was any good toot around, toot being another name for cocaine, and he told me—.

What did he state to you then?

He told me that he wished he would've known we were looking for some, he had done a gram last night, and I asked him if it was any good and he said it was good although he normally doesn't buy coke around here because the quality's not that good. It's kind of low grade. He said this was really good and I told him, "Well, if you happen to pick up a quarter ounce or so, I'd be interested in a couple grams." He said, "Well, if I get some toot again, I'll let you know."

The final drug transaction occurred on September 19, 1983. Hughes told Schultz that Gitary had cocaine for sale. Schultz met Gitary at his home in Angola, Indiana. Schultz gave Gitary $100.00 in exchange for a package containing a white powder. Schultz testified that, when he inquired about the availability of larger quantities of cocaine, the conversation went as follows:

Mr. Gitary told me that a quarter ounce would be $550.00.

Quarter ounce of what?

Of coke. And I asked him what about an ounce and he said, well, he didn't get the price of an ounce cause he didn't know if he could sell that much at one time, and I told him that I had a couple of my friends who wanted to go together with me to buy an ounce and he said that he should be getting another shipment in in about two weeks and he would find out the price then. He said he knew several other people that wanted the coke too and he was tryin' to set up a regular schedule for it, so I told him I would probably call him next week to tell him how much I wanted and I thanked him and left.

Chemical analysis confirmed that the substance sold by Gitary to Schultz on June 7 and 14 was marijuana and that the substance sold on September 19 was cocaine.

## I.

### Entrapment

■ Gitary first contends the evidence was insufficient to rebut his defense of entrapment. Specifically, Gitary argues the State failed to prove that he was predisposed to deal in marijuana and cocaine.

Entrapment is a statutory defense. Indiana Code 35–41–3–9 provides:

Entrapment.—(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Gitary is correct that when a police officer or his agent has participated in buying a controlled substance, the State must present evidence showing the accused's predisposition to commit the crime in order to show that the act was not the sole idea of the police officer. *Muday v. State* (1983), Ind.App., 455 N.E.2d 984, 987. The question of a defendant's predisposition is a question of fact. The standard of review is, thus, the same as that for other sufficiency claims. *Voirol v. State* (1980), Ind. App., 412 N.E.2d 861, 863, *trans. den.*

When the sufficiency of evidence is challenged, this court will neither weigh the evidence nor judge the credibility of witnesses. We will consider the evidence most favorable to the State and all reasonable inferences which may be drawn from that evidence. If there is substantial evidence of probative value to support the

conclusion of the trier of fact, we must affirm. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937.

Several factors are relevant to whether the defendant was predisposed to deal in a controlled substance. As we observed in *State v. White* (1983), Ind.App., 454 N.E.2d 87, 90:

> The defendant's knowledge of prices and sources, possession, quantity of substance, willingness to engage in future transactions, eagerness in the present sale, and knowledge of slang use are all evidence relevant to the defendant's subjective intent for the purpose of establishing predisposition.

In the present case, there is sufficient evidence to support the jury's conclusion that Gitary was predisposed to deal in controlled substances. The evidence shows that Gitary was familiar with prices and sources for both marijuana and cocaine. He possessed at least ten one-ounce bags of marijuana, which the jury could reasonably infer was more than an amount required for Gitary's personal consumption. His conversations with Hughes and Schultz demonstrate a willingness to engage in future transactions, particularly his comments that he expected another shipment of cocaine soon and was attempting to "set up a regular schedule for it." Also, Gitary told Hughes and Schultz that if they ever wanted any more marijuana, to just let him know. Finally, Gitary understood Schultz's use of the slang term "toot" to mean cocaine.

The jury had sufficient evidence of probative value from which it could reasonably conclude that Gitary was predisposed to deal in marijuana and cocaine.

## II.

### *Instruction Six*

Gitary next asserts that the court erred in giving final instruction six to the jury.[4] Final instruction six was given as follows:

> The defendant has asserted that he was a victim of entrapment in this case.
>
> Where a person, having no previous intention to violate the law, is talked into committing a crime by law enforcement agents, he is entrapped, and the law, as a matter of policy, forbids his conviction.
>
> On the other hand, where a person is already willing to commit a crime, it is not entrapment if the law enforcement agents merely provide an opportunity to commit the crime.
>
> So then, if you find beyond a reasonable doubt that, before anything was done by government agents, the defendant was willing to commit a crime like the ones charged in this case if the opportunity was offered, and that the law enforcement agents did no more than offer the opportunity, then you should find that the defendant was not entrapped.
>
> On the other hand, if the evidence in the case leaves you with a reasonable doubt whether the defendant was willing to commit the crime, apart from the persuasion of law enforcement agents, then you must find him not guilty.

Gitary made the following objection to instruction six at trial:

> Except I guess, uh, the defendant objects I guess to [instruction six] for the record for the reason that we're talking about committing *a* crime versus statutory language of *the* crime and the, uh, *a* crime being any crime whether we're talking about homicide or rape or robbery or whatever as opposed to *the* specific crime of dealing, I think would have an effect to mislead where the statute is very clear on *the* crime being the delivery.

---

**4.** In his brief, Gitary also asserts that the trial court erred in giving final instruction five. While his motion to correct errors raises more than fifty alleged errors, it fails to raise any issue as to final instruction five. Therefore, Gitary has waived any possible error on this point. *Phillips v. State* (1986), Ind., 496 N.E.2d 87, 89. We note, however, that this instruction is one of the Indiana pattern jury instructions, and was approved in *Mack v. State* (1983), Ind., 457 N.E.2d 200, 202.

Instruction of the jury is within the sound discretion of the trial court. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 581. Any error in a particular instruction will not warrant reversal unless the error is of such a nature that the entire charge of which it is a part misled the jury on the law of the case. *Id.*

Gitary does not persuade us that the entire charge of which instruction six is a part misled the jury. For two reasons, we believe the instruction cannot reasonably be read to involve "any" crime the defendant might have been willing to commit. First, the instruction reads: "Commit a crime *like the ones charged in this case* ...." Gitary was charged with dealing in marijuana and cocaine, not with rape or homicide.

Second, instruction six was preceded by instruction five, which set forth the statutory language on entrapment, and then instructed the jury on the burden of proof:

The defense of entrapment is defined by law as follows:

It is a defense that the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and the person was not predisposed to commit the offense.

Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

The State has the burden of disproving this defense beyond a reasonable doubt.

The purpose of an instruction is to inform the jury of the law applicable to the facts so the jurors may comprehend the case accurately and arrive at a just and correct verdict. *Taylor v. State* (1986), Ind., 495 N.E.2d 710, 713. In the present case, the judge properly informed the jury of the elements of the entrapment defense by giving instruction five. The judge then, in instruction six, interpreted the defense so the jury could comprehend the law. The judge did not abuse his discretion.

## III.

### *Gitary's Tendered Instructions*

Gitary claims that the court erred in refusing to give his tendered instructions one and two. In considering whether an error results from the refusal of a tendered instruction, this court must determine whether the tendered instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which are given. *Bowling v. State* (1986), Ind., 493 N.E.2d 783, 786. Here, the substance of Gitary's instructions one and two is fully covered by the court's more succinct final instructions five and six. Thus, the court did not err in rejecting Gitary's instructions one and two.

## IV.

### *Conspiracy*

■ Gitary alleges he was the target of a conspiracy involving Consolidated Freightways, the Indiana State Police, and a police informant. At trial, Gitary attempted to introduce testimony regarding a notebook which he claims bore his name. Gitary hoped to show that his employer sought to terminate troublesome employees by causing them to be charged with drug offenses.

The court sustained the State's objection to this line of testimony as irrelevant and confusing to the jury. Defendant counsel's offer to prove suggested that Consolidated Freightways had no drug problem before the arrival of police informant Hughes.

The trial court has broad discretion in ruling on the relevance of evidence. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 298. Evidence is relevant if it logically tends to prove or disprove an issue of material fact. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 583. Gitary's proffered evidence does not logically tend to prove or disprove whether Gitary dealt in marijuana or cocaine. Further, the jury was made aware that agents of the Indiana State Police participated in the transaction. *How* the

police became involved in the case is not relevant to the jury's determination of whether Gitary was predisposed to deal in marijuana or cocaine. We cannot say that the trial judge abused his discretion by deciding that the jury would be unnecessarily confused by the "conspiracy" evidence offered by Gitary. Thus, Gitary's convictions are affirmed.

Affirmed.

HOFFMAN, J., and GARRARD, P.J., concur.