Carol NICHOLS, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 82A01–8903–CR–83.

Court of Appeals of Indiana, First District.

Aug. 23, 1989.

Dennis Brinkmeyer, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

Carol Nichols appeals the judgment of the Vanderburgh Superior Court, finding her guilty of the offense of Reckless Homicide, a class C felony,[1] but mentally ill.[2] We affirm.

### FACTS

Edward Hurt and Carol Nichols lived in separate apartments on the second story of an Evansville apartment building. On June 17, 1986, at approximately 11:00 a.m. Nichols entered the apartment of Alvin Charles, another tenant in the building. Once inside, she simply sat and stared at

---

**1.** Indiana Code section 35–42–1–5.

**2.** Indiana Code section 35–36–2–3(4).

the wall for some time. Nichols then started repeating that Hurt was dead. Charles sent another individual, Roy Smyth, to Hurt's apartment to investigate. Smyth returned and stated, "He's gone." Charles attempted to question Nichols, but she was unresponsive. Charles then telephoned the police and the landlady. Hurt was found slumped on his couch with a revolver at his side. Hurt died as the result of a single gunshot wound to his head.

Officer David Gulledge was the first policeman at the scene. Upon learning that Nichols had discovered Hurt's body, Gulledge asked Nichols to accompany him outside for questioning. On the way outside, Nichols stated that she had shot Hurt. Gulledge then advised Nichols of her *Miranda*[3] rights. Again, Nichols stated that she had shot Hurt. Nichols was taken to the police station, and was once again advised of her *Miranda* rights. Nichols gave two statements, both of which were tape recorded, in which she admitted shooting Hurt, but claimed it was an accident.

Nichols subsequently was charged with murder. After a four day trial, the jury found Nichols guilty of Reckless Homicide, a class C felony, but mentally ill. From this verdict, Nichols now appeals.

## ISSUES

1. Did the trial court err in denying Nichols' motion to suppress the statements she made to the police on the day of the shooting?

2. Did the trial court err in refusing to tender to the jury Nichols' preliminary instructions, numbers one (1) and two (2)?

3. Did the trial court err in refusing to tender to the jury Nichols' final instruction number nine (9)?

4. Did the trial court err in tendering the court's final instruction number twenty-three (23)?

## DISCUSSION AND DECISION

*Issue One*

Nichols first contends that the trial court erred in failing to suppress the statements she made to the police officers on the day of the homicide. Nichols claims that although she was advised of her *Miranda* rights, she did not fully understand those rights and that she could not voluntarily give a statement due to her mental incompetence. We disagree.

The admissibility of a statement or confession is determined from the totality of the circumstances; and, whether the confession was given voluntarily and not through inducement, violence, threats, or other improper influences which would have overcome the free will of the accused. *Brown v. State* (1985), Ind., 485 N.E.2d 108, 112–13. On review of the denial of a motion to suppress a confession and the subsequent admission of the confession into evidence, we will not reweigh the evidence or reassess the credibility of witnesses. *Johnson v. State* (1987), Ind., 513 N.E.2d 650, 651. The question of voluntariness is one for the trial court; we will not disturb the trial court's ruling when it is supported by substantial evidence of probative value, even though it may be conflicting. *Johnson*, 513 N.E.2d at 651; *Brown*, 485 N.E.2d at 113.

Before a confession may be admitted into evidence at trial, the state must establish beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights to an attorney and not to incriminate himself. *Johnson*, 513 N.E.2d at 651. The degree of impairment of the defendant's mental faculties at the time of the waiver and confession is of critical importance in determining whether a statement was given voluntarily. *Brown*, 485 N.E.2d at 113. However, while a defendant's mental condition may be a significant factor in determining whether a confession was given voluntarily, this does not justify a conclusion that mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional voluntariness. *Colorado v. Connelly* (1986), 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473, 482.

---

3. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Given that "the purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution" *Connelly*, 479 U.S. at 166, 107 S.Ct. at 521, 93 L.Ed.2d at 484, it follows that an essential link between the defendant's confession and coercive behavior on the part of police interrogators must be forged before the statement is excluded based on involuntariness.

■ Substantial evidence was presented in the case at bar tending to support the trial court's determination that Nichols' confessions were entered voluntarily. Officer Gulledge was the first police officer to arrive at the apartment building. He was informed that Nichols had discovered Hurt's body. Gulledge then requested that Nichols accompany him outside for questioning. Gulledge testified that, while on their way out, Nichols admitted killing Hurt. Gulledge states he then read Nichols her *Miranda* rights. Nichols was driven to the police station. However, before she was taken away for questioning, Officer Zirklebach also read Nichols her *Miranda* rights. Both officers testified that Nichols appeared to understand the advisement. Once at the police station, Nichols was placed in an interview room. She was again read her rights and she issued a written waiver. Gulledge noted that again Nichols appeared to understand the advisement. Gulledge and Zirklebach both testified that Nichols' answers to their questions were appropriate and seemingly rational. Nichols appeared lucid and aware of her surroundings. Officer McDaniel, who read Nichols her rights once she was brought to the interview room, also testified that she appeared to be lucid and provided logical and rational answers to questions asked throughout the interview. The officers denied having knowledge of Nichols' mental disorder.

Three psychiatrists testified at trial. Each one was of the opinion, having reviewed the statements made during police interrogation, that Nichols' statements appeared to be rational and coherent. Dr. Longstaff and Dr. Cerling stated that in their opinion they believed Nichols' confession to be voluntary. Dr. Thomas Liffick was of the opinion that Nichols' mental disorder may have affected her ability to resist any pressure to confess exerted by the police officers, but also opined that Nichols appeared to understand what was going on when she confessed, and that the confession could very well have been voluntary. Given the foregoing evidence combined with a complete lack of evidence as to police overreaching or coercion, we hold that the trial court did not err in denying Nichols' motion to suppress and in admitting the confessions into evidence.

*Issue Two*

Nichols next contends that the trial court erred in refusing to tender Nichols' preliminary instructions number one (1) and two (2). Nichols is mistaken.

■ We first note that Nichols' instruction number one (1) contained an error of law. The instruction stated in pertinent part:

"You are instructed that once the issue of sanity [sic] is raised, the burden of proving sanity is on the State. The burden requires the State to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the alleged act."

Record at 1496–97. However, Indiana Code section 35–41–4–1 states:

"(a) A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt.

"(b) Notwithstanding subsection (a), the burden of proof is on the defendant to establish the defense of insanity (I.C. 35–41–3–6) by a preponderance of the evidence."

The instruction offered by Nichols appears to place the burden of proving sanity on the State. Instructions which imply that the State bears the burden of proving the defendant's sanity misstate the law. *Basham v. State* (1981), Ind., 422 N.E.2d 1206, 1210. Tendered instructions which contain an incorrect statement of the law are properly refused. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, 521. Therefore, the trial court committed no error in refusing

to tender Nichols' instruction number one (1) to the jury.

 Furthermore, regarding Nichols' preliminary instructions number one (1) and two (2) concerning the insanity defense, the principles of law contained therein were fully and properly covered by the court's preliminary instructions. The trial court may properly refuse to give an instruction which is covered by other instructions. *Martin v. State* (1989), Ind., 535 N.E.2d 493, 497.

Additionally, we note that where a court's final instructions fully explain the concept of insanity and guide the jury in their analysis of the insanity defense, any alleged defect in the preliminary instructions on this issue are deemed "rectified by final instruction." *Smith v. State* (1981), Ind., 420 N.E.2d 1225, 1228, *quoting Everly v. State* (1979), 271 Ind. 687, 692, 395 N.E.2d 254, 257. A review of the court's final instructions demonstrates that the principles of law addressed in Nichols' preliminary instructions number one (1) and two (2) were fully and thoroughly covered. Therefore, we hold that the trial court did not err in refusing to tender Nichols' preliminary instruction numbers one (1) and two (2).

*Issue Three*

Nichols next contends that the trial court erred in refusing to tender Nichols final instruction number nine (9) on insanity. As we noted in the preceding section, the trial court may properly refuse to give an instruction which is covered by other instructions. *Martin*, 535 N.E.2d at 497. The insanity defense was very thoroughly covered by the final instructions tendered by the court. Therefore the trial court did not err in refusing to tender Nichols' final instruction number nine (9).

*Issue Four*

Nichols' final contention is that the trial court erred in submitting the court's final instruction number twenty-three (23) to the jury. However, Nichols failed to object to the giving of instruction number twenty-three (23) at trial. The failure to object to an instruction waives any error. *Cox v. State* (1985), Ind., 475 N.E.2d 664, 669. Therefore, we will not review the trial court's decision to submit instruction number twenty-three (23) to the jury.

Affirmed.

BAKER and CONOVER, JJ., concur.