Teresa Ann SEELEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 60S00–8805–CR–442.

Supreme Court of Indiana.

Oct. 4, 1989.

---

C. Thomas Spencer, Hickam and Hickam, Spencer, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Count I, Felony Murder; Count II, Kidnapping; Count III, Robbery; and Count IV, Felony Murder. The trial court correctly ruled that Count III, Robbery, was an included offense of Count I, Felony Murder in the Perpetration of a Robbery, and that Count II, Kidnapping, was an included offense of Count IV, Felony Murder in the Perpetration of a Kidnapping. The trial court merged those counts accordingly. The trial court further found that it could not impose two sentences for murder where there had been but one person murdered. The court therefore sentenced appellant to forty (40) years imprisonment under Count I and vacated the convictions under Counts II, III, and IV.

The facts are: Douglas M. Crawford, the victim in this case, met Teresa Seeley, appellant in this case, Debbie King, and Penny Morrison as they were hitchhiking in Indianapolis. After picking them up, he bought beer and whiskey for everyone, then gave the women a ride to the Owen County home of Bernard Wyant, supposedly to go to a party. When they arrived at Wyant's home, King and appellant went inside where King asked for a gun to be used to rob Crawford.

While the others were in the Wyant home, Crawford made sexual advances to Morrison, causing an argument between them. Morrison got out of the car, went around to Crawford's side and, with the use of a knife, forced him from the car. At that point, she demanded his wallet and took other items from his pocket. She threw the items into the car and tied Crawford's hands with her shoelaces. Crawford was forced into the car and the three women drove away with King at the wheel.

After progressing down the road for some distance, they stopped, presumably to remove Crawford from the car. However, he had broken the shoelaces and a fight ensued. During the struggle, Crawford was forced from the car and the three women started driving away. However, they apparently discovered they were driving in the wrong direction to get to the highway to return to Indianapolis. King stopped the car, turned it around, and drove back toward Crawford who was standing beside the road. As she approached Crawford, she accelerated the car and stated, "I'm going to kill him," whereupon she drove into Crawford and in fact did kill him.

The women drove back to Indianapolis in Crawford's car. They eventually abandoned the car by driving it into White River in Indianapolis. Later, appellant and Morrison were at the apartment of Mark Patterson when appellant told him about killing Crawford and indicated that both women wanted to flee the state. Prior to that time, they had told Wayne Pryor about the killing. Appellant later contacted a coworker, Edna Kennedy, and told her about the killing. Kennedy subsequently made arrangements for appellant and Morrison to turn themselves into the police.

Appellant claims the trial court erred in failing to follow proper procedures when it became apparent that prospective jurors had received improper communications con-

cerning the facts of the case. Appellant moved for a new venire which was overruled by the court.

On the second day of jury selection, one of the panelists, Juanita Roberts, requested to speak with the court. The court advised her he could not converse with her but asked her to reduce her question to writing and present it to the court. Next the court called counsel for both parties to the bench and allowed them to read the note which stated: "The lady beside me said outside that she should have been charged with premeditated murder instead of just murder." The lady referred to in the note was Helen Ooley, another one of the panelists.

At this point, the court recessed the proceedings and met in chambers with counsel concerning the problem. It was decided to interrogate Mrs. Roberts outside the presence of the other jurors. She was brought into the courtroom, placed in the jury box, and questioned by all parties. She indicated that she had overheard a conversation between Mrs. Ooley and an unidentified panelist, who had not yet been examined, and that Mrs. Ooley had made the above-quoted statement.

Mrs. Roberts then was returned to the jury room and Mrs. Ooley was brought out and questioned similarly. Initially she maintained there had been no such conversation. However, she then recanted and recalled the conversation referred to in the note. However, she insisted it had nothing to do with the case before the court. She then was returned to the jury room. Both Mrs. Roberts and Mrs. Ooley were admonished not to discuss anything which occurred during their individual questioning.

Appellant then moved to strike the venire and requested the court call a new panel for the reason that the jury now was tainted in that an unidentified panelist, to whom Mrs. Ooley had made her statement, remained and was presumed to be among the as-yet unquestioned panelists. Appellant further claimed that the procedure of questioning Mrs. Ooley and Mrs. Roberts had created prejudicial speculation as to what had transpired during the recess.

The trial court denied appellant's motion for a new venire. However, the court excused both Mrs. Roberts and Mrs. Ooley. He then restored one peremptory challenge each to the State and the defendant and proceeded with impaneling the jury.

The next morning, the court advised counsel that Mrs. Roberts had called him at his home the night before and indicated that she felt compelled to report another incident which had occurred the day before. She reported that Janet Hall, a juror seated and sworn, had indicated to two other jurors during a recess that when she arrived home on the first day of jury selection, her husband had been very upset at the prospect that she would be selected because of the financial impact upon their family and that he felt the defendant was guilty simply because she was charged.

The trial court then brought Mrs. Hall out of the jury room and placed her in the jury box, and she was examined in the same manner as the other jurors had been examined the day before. She verified the conversation with her husband concerning the case and said that she had told Mrs. Sutherlen and Mrs. Stringfellow of the conversation. She stated that she had not been influenced by the conversation and could be a fair and impartial juror. The court then separately called Mrs. Sutherlen and Mrs. Stringfellow from the jury room for questioning. They both acknowledged the conversation with varying degrees of recollection.

Following this interrogation, appellant made a motion for mistrial which the court denied. The trial court refused to interrogate the remaining jurors on the ground that there was no evidence they had been exposed to the statement made by Hall to Stringfellow and Sutherlen.

■ Appellant claims the trial court did not follow the guidelines set forth in *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819. We would point out that the first incident referred to above occurred prior to the final selection of the jury, that the two prospective jurors who had been questioned by the court and the parties in fact were excused from the panel, and that the

jury selection continued with the court adding one additional preemptory challenge to each party. The procedure set forth in *Lindsey* is addressed to a situation occurring after the jury has been selected and the trial is in progress.

█ In the instant case, the parties had every opportunity to question each of the prospective jurors prior to finally accepting the jury. The trial court collectively questioned the panel members to learn of any exposure to the possibly prejudicial conversation, and no exposure was discovered. The trial court also admonished the jury collectively not to discuss the case. Under the circumstances, we cannot perceive that there is evidence of prejudice which would require the cause to be removed from the jury. *See Daniels v. State* (1976), 264 Ind. 490, 346 N.E.2d 566.

█ A factually different situation arises in the second incident where, after the jury had been seated, the court received further information of potentially prejudicial conduct. However, here the trial court again questioned the jurors involved and permitted counsel to do the same. When it was determined by the court that the so-called prejudicial statement's effect had been minimal and that each juror stated that they were unaffected by the remark, the court overruled appellant's motion for mistrial. Appellant again takes the position that the court erred in failing to follow the procedures set forth in *Lindsey*.

However, in *Lindsey*, after setting out the proper procedure to be followed in a situation such as in the case at bar, Justice Prentice stated:

"At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of

the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction." *Lindsey, supra*, 260 Ind. at 359, 295 N.E.2d at 824.

In the case at bar, the trial judge was faced with the dilemma either of accepting the word of the three questioned jurors that other jurors had not been exposed to their conversation or of running the risk of prejudicing the panel by questioning all of them concerning the improper remark by the one juror's husband. Even if we assume for the sake of argument that the court erred by not so proceeding, we cannot say that appellant was placed in such peril that it was uncurable by the general instruction to the jury that they were to decide the case solely upon the facts presented at the trial. Under the circumstances, we hold the trial court did not err in denying appellant's motion for mistrial. *See Gee v. State* (1979), 271 Ind. 28, 389 N.E.2d 303; *Daniels, supra.*

█ Appellant maintains the evidence is not sufficient to sustain the verdicts of felony murder. Appellant takes the position that both the robbery and the kidnapping had been completed, and appellant had left the scene of the crime with her companions when King, who was driving the car, independently determined to strike Crawford with the car, resulting in his death. Many times this Court has explained the difference between the technical completion of the felony to which the murder attaches and the continuing *res gestae* of that crime sufficient to bring it within the felony murder statute.

In *Eddy v. State* (1986), Ind., 496 N.E.2d 24, then-Justice Shepard carefully and accurately outlined the application of the felony murder statute. In that case, the appellant had requested an instruction to the jury which very closely follows appellant's theory in this case. In *Eddy*, the appellant took the position that the robbery was completed before the homicide was committed; thus the homicide did not occur during the commission of the robbery. Justice Shepard observed:

"This Court has long declined to define the phrase, 'while committing', in terms of the chronological completion of the statutory elements of the underlying felony. To require that the murder occur before each of the statutory elements of the robbery have been completed would elevate form over substance. The felony murder statute must be construed, in light of its purpose:...." *Id.* at 28.

One of the cases cited in *Eddy* is *Neal v. State* (1938), 214 Ind. 328, 14 N.E.2d 590. In that case, the Court stated:

"The taking of his money from the pockets of the victim, the disposal of his body, and the transportation of the car from the scene of the crime to Madison, were all parts of the same unlawful enterprise." *Id.* at 342, 14 N.E.2d at 597.

In *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 692, *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323, this Court stated:

"It has long been the law in Indiana that the shooting of a person by a robber or burglar while leaving the premises in an attempt to complete the crime is part of the *res gestae* of the robbery such that the shooting is, for felony murder purposes, committed in the perpetration of the robbery or burglary."

In the case at bar, appellant and her companions had just completed the robbery of appellant by taking his wallet and belongings from his person. They were leaving the scene in the victim's automobile, which they also had stolen from him. We perceive little difference in King's determination to run over the victim with his own automobile as they were escaping than if, for example, as they drove away, one of the women had fired a shot from the moving car striking and killing the victim. In either event, the victim's death was brought about by an act of one of the confederates as they continued in their completion of the crimes by effecting their escape in the victim's stolen automobile. There is ample evidence in this record to sustain the conviction of felony murder.

Appellant also makes the claim that neither she nor Morrison was consulted by King concerning her decision to drive the car into the victim. However, it is well established that when confederates undertake the commission of a felony and one of them causes a death in furtherance thereof, all are deemed equally guilty of the murder. *Evans v. State* (1986), Ind., 497 N.E.2d 919.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.