**Richard KATS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 50A03–8908–CR–348.**

Court of Appeals of Indiana, Third District.

Sept. 10, 1990.

349

James P. Hayes, Holmes & Hayes, Plymouth, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Richard Kats (Kats) appeals his conviction of Dealing in Cocaine, a Class A felony, presenting the following issues for our review:

I.     Whether the trial court erred by allowing members from the jury trial of a co-defendant to sit on Kats' jury panel?

II.     Whether sufficient evidence exists to support Kats' conviction of conspiracy to deal cocaine, a Class A felony?

III.     Whether the trial court should have granted the defense of entrapment as a matter of law?

IV.     Whether sufficient evidence exists to overcome the defense of entrapment?

V.     Whether the trial court erred by denying the Defendant's tendered instruction on the presumption of innocence and conflicting evidence?

VI.     Whether the twenty year sentence that Kats received was disproportionate to the crime?

Rocky Roe was to work off charges by acting as a confidential informant to uncover drug dealers, and, in September of 1988, Police Officer James Wedel met with Rocky Roe and discussed the possibility of purchasing narcotics with Roe going undercover.

At some point in October, Roe and Wedel went to a residence which, according to Roe, was Kats', and also which, again according to Roe, was a place where Wedel could obtain drugs. While Wedel waited in the car, Roe went to the door, obtained entry and supposedly purchased drugs from Kats. However, Roe was the only witness to the "transaction," as there were no controls over the situation.

At a later date, Wedel met with Roe at the intersection of State Roads 6 and 31. With Roe were Richard Kats and Theresa Lett (Lett). At that time, Roe left their car and approached Wedel's car, where he obtained $300 front money. However, Roe later returned the $300 to Wedel, because he did not effect a buy.

Later Wedel met with Roe at the intersection of State Roads 6 and 31. As before, Richard Kats and Theresa Lett sat in the front seat of the car; Roe sat behind the driver's seat with two children sitting next to him. At this time, Wedel approached Kats' car, and Wedel gave Kats $300.00 for the "front money." Wedel and Kats agreed to meet later that day to complete the transaction. According to the testimony, Roe provided Kats with the cocaine to give to Wedel. Later, the same group met in a Hook's drugstore parking lot. When Kats gave Wedel a bag containing over 3 grams of cocaine, Wedel signalled to nearby undercover officers, and the group was arrested.

Upon searching Kats, the police found 3 grams of cocaine in his jacket pocket; a search of Lett revealed marijuana in her purse. In the car, the police discovered marijuana in the glove compartment and in a box in the trunk of the car. The police also discovered cocaine under the mat behind the driver's seat, where Roe was sitting. Underneath the driver's seat itself, the police found a cut down straw and a razor blade, two items associated with drugs.

Kats contends that he was desperately in need of money. When he approached Roe for a loan, Roe refused, but convinced him to obtain the money through Wedel. Although Kats continually expressed grave misgivings, because of his dire situation, Kats was convinced by Roe to join in the drug transaction. Apparently, Kats had never been involved with drugs; he has no criminal record.

## I.

### The Jury Panel

■ Kats claims that a new trial is warranted because one of the members of the jury that convicted Kats' co-defendant, Theresa Lett, was among the venire group from whom Kats' jury was ultimately chosen.

Prior to the questioning of the veniremen, Kats moved, via a motion in limine, that no questions be asked concerning the

previous trial and conviction of his co-defendant, Lett. This was motivated by a fear that, given the intense publicity surrounding Lett's trial and conviction, mere reference to Lett could inflame the veniremen who had not previously made a connection between the two trials.

Consequently, the court granted Kats' motion, and the prospective jurors were not specifically questioned as to whether they had heard of or been involved with the Lett case. Additionally, via a court list, the court attempted to remove Lett's jury members from Kats' jury panel. Eight people were excused; a ninth member inadvertently remained on the panel.

According to Kats, although this ninth member was dismissed during voir dire, prior to the impaneling of the jury, this member had had the opportunity to talk among and influence those people ultimately chosen to sit upon his jury. In support, Kats refers to *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819; however, we note that *Lindsey* addresses a situation which occurs "after the jury has been selected and the trial is in progress." *Seeley v. State* (1989), Ind., 544 N.E.2d 153, 156.

In *Seeley*, although the defendant moved to strike the entire venire because it was "tainted" by the panelist who had overheard another member refer to the status of the crime, the court denied the defendant's motion. Our Supreme Court pointed out that "the parties had every opportunity to question each of the prospective jurors prior to finally accepting the jury." *Seeley, supra*, at 156. The *Seeley* court concluded by noting that the circumstances did not indicate "evidence of prejudice which would require the cause to be removed from the jury." *Id.*

In Kats' case, Kats had every opportunity to question the prospective jurors after the eight people had been removed. While such questioning led to the discovery of a person who had sat upon the Lett case, the record indicates that Kats ignored an early opportunity to object to the presence of Lett's jury member.

THE COURT: Do any of you know the Defendant, Richard Kats, spelled K–A–T–S, and he's from Rochester, Indiana?

\* \* \* \* \* \*

PROSPECTIVE JUROR: I sat on the Jury for Theresa.

THE COURT: Okay, but you're not personally acquainted with Mr. Kats?

PROSPECTIVE JUROR: No.

Record, p. 144, 11. 8–10; p. 145, 11. 5–8. As the above colloquy shows, Kats made no objection at that time.

Later, when the prospective juror again revealed her involvement with the Lett case, the State, not Kats, asked to approach the bench.

MR. PALMER [the State]: Okay, the rest of you were on a civil case, an auto accident? (Prospective Jurors indicate affirmative.)

PROSPECTIVE JUROR: The Theresa Lett case.

MR. PALMER: You served on the Theresa Lett case?

PROSPECTIVE JUROR: (affirmative)

MR. PALMER: Okay. Can we approach the bench, Your Honor?

THE COURT: Okay.

(Counsel approach bench.)

MR. PALMER: She slipped through, somehow.

MR. HAYES [counsel for Kats]: That's what I thought she said.

Record, p. 150, 11. 16–21; p. 151, 11. 1–7. This prospective juror was immediately excused. Thus, unlike the situation in *Seeley*, Kats' jury was never impaneled.

Finally, Kats presents no evidence which shows that the extended presence of the "ninth" juror adversely affected his case, nor does he indicate how this juror damaged his case beyond any damage arguably committed by the presence of the eight members previously excused. Accordingly, as the determination of "juror misconduct is a matter within the trial court's discretion," *Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1130, we find no abuse of discretion warranting a new trial.

## II.

### Sufficiency of Evidence

Kats also contends that the evidence is insufficient to support his conviction of Conspiracy to Deal Cocaine, a Class A felony.

When reviewing to determine sufficiency, this Court neither reweighs the evidence nor judges witness credibility; but looks instead to the evidence most favorable to the verdict along with its reasonable inferences. *Mitchell v. State* (1989), Ind., 541 N.E.2d 265, 267. We will reverse only when there is no evidence of probative value which would allow a reasonable trier of fact to infer guilt beyond a reasonable doubt. *Id.*

Here, Kats contends that "there is nothing in the record to show that Lett ever did anything but sit in the car; ... there is no evidence of an agreement, nor is there any circumstantial evidence from which an agreement could be inferred. Finally, there is no evidence of any overt actions at all on the part of Lett in furtherance of the conspiracy." Appellant's Brief, pp. 18–19.

■ We agree. To convict upon a charge of conspiracy, the following elements must be proven: the "intent to commit a felony, an agreement with another person to commit the felony, and an overt act in furtherance of that agreement." *Hopper v. State* (1989), Ind., 539 N.E.2d 944, 946.

A Seventh Circuit case specifically held that mere knowledge of, or presence at, a drug transaction and association with co-conspirators are insufficient evidence of that person's agreement to conspire. In *United States v. Williams* (7th Cir.1986), 798 F.2d 1024, ... the Seventh Circuit stated that the evidence established only presence or knowledge, before adamantly reiterating that:

This court has emphasized several times, however, that *mere association with co-conspirators or presence at the scene of an offense or knowledge that something illegal is going on is insufficient to establish membership in a conspiracy* under the slight evidence standard. (Emphasis added.)

*Williams, supra,* at 1028.

■ Here, the testimony reveals that Lett did no more than associate with Kats and that she was present at a transaction. The record reveals no additional evidence which would indicate the presence of a conspiracy between Kats and Lett. The inferences available may point to an agreement between *Roe* and Kats, but this was not the crime charged in the information. The information reads:

Affiant, ..., says that: On or about the 12th day of November 1988, at and within the County of Marshall, State of Indiana, one *Richard Kats* and *Theresa Lett* did, with the intent to commit a felony, to-wit: Dealing in Cocaine, agree with and among each other to obtain cocaine and deliver it to Detective Wedel, ....

Information, Count III, Record, p. 3.

As no evidence exists to support a Conspiracy between Kats and Lett to Deal Cocaine, Kats' conviction on this count must be reversed.

## III.

### The Entrapment Defense

■ Kats also contends that the court should have granted him the defense of entrapment as a matter of law.

The defense of entrapment reads:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

West's A.I.C. § 35–41–3–9(a). Thus, the evidence must reveal both inducement by the government as well as the defendant's lack of predisposition. *U.S. v. Fusko* (7th Cir.1989), 869 F.2d 1048, 1052.

■ The defense of entrapment is raised once the evidence indicates that the police

were involved in the "criminal activity." *Fearrin v. State* (1990), Ind.App., 551 N.E.2d 472, 473. *Id.* At this point, the burden is upon the prosecutor to show that "the defendant has *not* been induced or hired by a governmental agency to commit a crime which he had no predisposition to commit." (Emphasis added.) *Fearrin, supra,* at 474. "Entrapment is established *as a matter of law* if the evidence shows police activity absent any showing of predisposition on the part of the accused." *Id.* (Emphasis added.)

■ The entrapment defense turns upon the defendant's state of mind, i.e., whether the "criminal intent originated with the defendant[.]" *U.S. v. Toro* (5th Cir.1988), 840 F.2d 1221, 1230. Specifically, the theory focuses upon the "defendant's state of mind and inclinations before initial exposure to government" conduct. *U.S. v. Marren* (7th Cir.1989), 890 F.2d 924, 930. In other words, the question is whether "criminal intent [was] deliberately implanted in the mind of an innocent person[.]" *U.S. v. Killough* (E.D.Ark.1985), 607 F.Supp. 1009, 1011. For, as stated by the Ninth Circuit, one's sense of justice is shocked to find that government agents engineer a transaction from start to finish, rather than infiltrating those already engaged in the activity. *U.S. v. So* (9th Cir. 1985), 755 F.2d 1350, 1355.

■ The predisposition of the defendant is a question of fact; thus, the standard upon review is that used to address sufficiency claims. *Gitary v. State* (1987), Ind. App., 503 N.E.2d 1241, 1243. Consequently, we neither reweigh the evidence nor judge witness credibility, but look instead to the evidence most favorable to the verdict along with its reasonable inferences; we will reverse only when there is no evidence of probative value which would allow a reasonable trier of fact to infer guilt beyond a reasonable doubt. *Mitchell, supra,* at 267.

The Seventh Circuit has acknowledged the importance of the following factors in determining whether predisposition of a defendant exists. These are:

(1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government. *Fusko, supra,* at 1052.

■ Here, there is no dispute that the government was involved in the criminal activity via its informant, Roe. Thus, the remaining prong of the entrapment defense lies in whether Kats was predisposed to commit the sale of cocaine. According to the factors listed above, there is no evidence to support the State's predisposition argument.

Upon looking at the factors enunciated by the Seventh Circuit, the record reveals the following. With regards to the first factor, the evidence indicates that Kats' name was not included in Roe's list of known drug dealers.

Officer Wedel testified that when he met with Roe to discuss possible dealers, the name of Richard Kats was not brought up. Additional testimony indicates that Kats did not even use drugs, and he has no record of drug-related convictions.

Second, concerning whether the criminal activity was suggested by the government, the evidence indicates that Kats did not initiate the transaction in question. While Officer Wedel testified as to what actually happened, only Kats testified as to how it came about. Roe was never called to rebut Kats' testimony.

As stated in *Fearrin*, evidence establishing the defendant's predisposition

is usually established via the informant's testimony of the defendant's reaction to a suggestion of the police agent's need for drugs. Often a tape recording of the transaction itself supplies the indicia of predisposition. [Here], the [*Fearrin*] jury did not hear any tape-recorded transaction, or testimony of the informant, . . . .

*Fearrin, supra,* at 474. Here, too, Kats' jury heard only Kats' direct testimony about the conception of the transaction. Kats testified that he was in need of money and wanted to borrow money from Roe; in reply, Kats was told that maybe Roe's "money man" would lend Kats money. Kats' testimony indicates his own reluctance; he recoiled from even handling the bag. Officer Wedel offered no testimony concerning the initial contact between Kats and Roe. Thus, no testimony exists to contradict Kats' version. There simply is no evidence favorable to the State for this court to rely upon.

As to whether Kats was engaged in criminal activity for a profit, again, the record contains no evidence to support the State's position. The testimony of Wedel indicated that Kats was not a known drug dealer. Although Wedel testified that Roe went into Kats' house and returned with drugs, there is no evidence to indicate that Roe purchased the drugs from Kats. In fact, there is no evidence to support Wedel's notion that Roe purchased drugs from *anyone* in the house. There were no controls over the alleged "transaction." Even looking exclusively at Wedel's testimony, the record reveals only that Roe gave cocaine to Wedel when he returned to the car. Nothing exists to support a sale in the house. Kats testified that he did not sell cocaine to Roe when he visited; Roe did not testify in rebuttal.

The fourth factor, i.e., the degree of the defendant's reluctance to engage in the criminal activity, also negates a reasonable inference of pre-disposition. The only testimony in the record is that of Kats. According to his testimony, he approached Roe for money. Roe suggested the drug deal. Roe insisted that Kats had to personally hand the drugs to Wedel in order to obtain the money. Kats' testimony is permeated with reluctance, and, once again,

the State offered no evidence to rebut that testimony.

Fifth, the record reveals that the government, via informer Roe, had to actively persuade Kats to partake in the transaction. The testimony indicates that selling drugs was Roe's idea. The record also shows that Roe set up the transaction and actually supplied the drugs in question. Wedel's testimony does not contradict this.[1]

Consequently, we can only conclude that "the evidence shows police activity absent any showing or predisposition on the part of the defendant." *Fearrin, supra,* at 474. Although we have searched the record, no evidence favorable to the State exists; no evidence to rebut Kats' testimony exists. There was no conflicting evidence to be interpreted. The evidence indicates that Kats had no criminal intent prior to Roe's persuasive influence; Kats was not predisposed to sell cocaine. Thus, predisposition was not shown; entrapment was established as a matter of law.

## IV.

### *Insufficient Evidence & Entrapment*

Our disposition of Issue III makes it unnecessary for us to reach this issue.

## V.

### *Instruction # 9*

Kats also claims that the trial court erred by refusing his tendered instruction # 9, which included an explanation of the presumption of innocence, and instructions on handling conflicting evidence. According to Kats, neither of these aspects was covered by those instructions actually given. However, after reviewing those instructions actually given to the jury, it is apparent that the jury was informed of both of the above factors.

---

**1.** While we do not rule on this point, we note that, in *People v. Martin* (1984), 124 Ill.App.3d 590, 464 N.E.2d 837, 839, the Illinois Court of Appeals held as follows:

While the People are correct that there is no rule establishing entrapment as a matter of law solely because the government provided the controlled substance which the accused was charged with delivering [citation omitted], it is persuasive evidence that if the substance was supplied by the government or its paid informer *and* the State *fails to call the informer* to *rebut* the defendant's testimony that the informant supplied the drugs to the defendant, a conviction for selling the drugs may *not* be sustained [citations omitted].

When reviewing the trial court's determination as to which instructions were to be given to the jury, if the substance of the tendered instruction is covered by those instructions actually given, no error has been committed by refusing to give the tendered instruction. *Nichols v. State* (1989), Ind.App., 542 N.E.2d 572, 576.

The defendant's own tendered instruction reads:

[I]f two inferences arise from a proved fact or facts, one being consistent with guilt and the other being consistent with innocence, and each is equally probable, you must accept that inference which is consistent with innocence.

Once you determine whether inferences arise from the evidence, under the guidelines I have given you, you should consider those inferences along with all of the other evidence to determine whether the State has met its burden of proving the existence of each element of the offense beyond a reasonable doubt.

Defendant's Instruction No. 5, Record, p. 78.

In pertinent part, the instructions given include the following paragraphs:

Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove, beyond a reasonable doubt, the defendant guilty of each essential element of the crime as charged.

The defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

Court's Final Instruction No. 3, Record, p. 56.

Similarly, another instruction reads:

\* \* \* \* \* \*

You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you must determine which of the witnesses you will believe and which of them you will disbelieve.

\* \* \* \* \* \*

Court's Final Instruction No. 6, Record, p. 59.

Thus, the substance of the Defendant's refused instruction, including the interpretation of conflicting evidence, was adequately covered by the instructions given to the jury. We find no error here.

## VI.

### The Sentence

Finally, Kats claims that his convictions for dealing cocaine and conspiracy to deal cocaine arise from the same set of facts; accordingly, Kats concludes that the court should have merged his sentences for these crimes. However, our disposition of Issues II and III makes this question moot.

Kats' convictions for conspiracy to deal cocaine and dealing in cocaine are reversed.

GARRARD, J., dissents with separate opinion.

SULLIVAN, J., concurs in all issues except issue III, to which he concurs in result.

GARRARD, Judge, dissenting.

I dissent as to the majority's determination that the evidence was insufficient.

As to the count for dealing, the majority finds Kats was entrapped. In so doing it regrettably indulges in reweighing the evidence by relying upon that portion of the evidence which supports Kats's argument.

The evidence favoring the verdict supports a different inference concerning Kats's predisposition.

Kats showed a willingness to complete the deal at hand by arranging to supply the requested amount of cocaine in the near future. He demonstrated his awareness of the procedure, packaging and weights involved in a drug deal ("8–balls" and "quarters"). Kats was aware of the prices for the usual packaged amounts, and was familiar with readily available sources for cocaine in Chicago. He was familiar with

the terminology and slang used for cocaine deals, *e.g.,* "8–ball" and "quarter" packages. He was operating as a middleman for a Chicago supplier. Finally, Kats was inferentially involved in a prior sale and another prior attempted sale. In addition to the above, a quantity of cocaine was found in Kats's jacket and in the car, and marijuana was found in his companion's purse, in the car's glove box and in the trunk.

From this evidence the jury could reasonably have determined that Kats was predisposed to commit the offense. *See, e.g., Gilley v. State* (1989), Ind., 535 N.E.2d 130, 132; *Johnston v. State* (1988), Ind., 530 N.E.2d 1179, 1181–82; *Fundukian v. State* (1988), Ind., 523 N.E.2d 417, 418. I would therefore affirm the conviction for dealing.

Concerning the conspiracy conviction, the evidence introduced at trial and the inferences therefrom which favor the jury's verdict are sufficient under our supreme court's decision in *Chambers v. State* (1988), Ind., 526 N.E.2d 1176 to support the verdict.

I, therefore, respectfully dissent.